[Civ. No. 2852. Third Appellate District.—April 2, 1925.]

## VICTOR J. EAMES et al., Respondents, v. R. S. PHILPOT et al., Appellants.

[1] INJUNCTION — REMOVAL OF WOOD — IRREPARABLE DAMAGE — PLEADING—EQUITY.—In a suit for an injunction to prevent the removal of wood from plaintiffs' premises, a statement in the complaint that the plaintiffs will, unless the defendants are enjoined from removing the wood, suffer "irreparable damages," taken alone, is a mere legal conclusion, and, in the absence of a statement of facts substantiating or supporting it, would not justify a court of equity in extending its aid by way of preventive relief to a suitor for such aid.

[2] ID.—IRREPARABLE DAMAGE—CONTINUING TRESPASS—PLEADING.—In such an action, where the complaint, in addition to the allegation that the plaintiffs will, unless the defendants are enjoined from removing the wood, suffer irreparable damages, alleges that plaintiffs were and are the owners and in possession of a specified quantity of wood, located on land belonging to them and that the defendants have removed a portion of said wood from said land and threaten to move all of said wood and dispose of the same, a case in which a continuing trespass will be suffered by the plaintiffs is presented, and in which the injunctive power of a court of equity may be appropriately invoked.

[3] ID.—PLEADING—ADEQUATE REMEDY AT LAW.—The plaintiffs are not afforded an adequate remedy at law where their complaint states that the defendants would, unless restrained from so doing, remove the wood and dispose of it, which averment means that

---

1. See 14 Cal. Jur. 264.

2. What constitutes irreparable injury within law of injunction, note, 1 Am. St. Rep. 374. See, also, 14 R. C. L. 345–347.

they intended to put it on the market and sell it to such persons as might desire to buy it; and hence it would be necessary to bring an action in claim and delivery against each of such persons as might purchase a portion of the wood from the defendants.

[4] ID.—CONTINUING TRESPASS—MULTIPLICITY OF ACTIONS—REMEDIES. If the trespass is continuous in its nature, if repeated acts of wrong are done or threatened, although each of these acts, taken by itself, may not be destructive, and the legal remedy may therefore be adequate for each single act if it stood alone, then the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions.

[5] ID.—FORFEITURE OF LEASE—WRONGFUL REMOVAL OF WOOD—FINDINGS—EVIDENCE.—In such action, findings showing a forfeiture of the rights of a lessee of the premises upon which the wood was located for noncompliance of her obligations under the lease, and also showing that the trustee in bankruptcy of the lessee and a purchaser of the wood had wrongfully removed the wood after the occurrence of such forfeiture, were supported by the evidence.

[6] ID.—BANKRUPTCY—RIGHTS OF TRUSTEE OF LESSEE—POSSESSION.— The fact, if it was a fact, that the lessee included within her schedule of assets and liabilities in bankruptcy the wood in question did not and could not have the effect of divesting plaintiffs of the right to the possession or the possession of the wood. The lessee had no right to include as among her assets in said schedule the property of others, and if she did do that with respect to the wood in question, the plaintiffs were nevertheless legally authorized to hold such possession, until the trustee established, if he could, by a proper proceeding in court (by claim and delivery, for instance), that he was entitled by virtue of his office as such trustee to the possession of the wood by reason of the lessee's ownership thereof at the time she petitioned the federal court to be adjudicated a bankrupt.

---

(1) 32 C. J., p. 330, n. 29. (2) 32 C. J., p. 139, n. 10, p. 142, n. 41, p. 331, n. 42. (3) 32 C. J., p. 144, n. 57. (4) 32 C. J., p. 141, n. 32. (5) 7 C. J., p. 116, n. 55 New. (6) 7 C. J., p. 37, n. 24.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. W. Zagoren for Appellants.

---

4. Injunction as remedy for continuing or repeated trespass, note, 15 Ann. Cas. 1235. See, also, 14 R. C. L. 455.

F. J. Harris and Thomas B. Leeper for Respondents.

HART, J.—The plaintiffs, on the seventh day of July, 1921, by a writing, leased to one Mrs. M. G. Wilson, a widow, for the term of two years, beginning with the first day of July, 1921, and ending on the thirtieth day of July, 1923, a certain specifically described quarter-section of land situated in El Dorado County, and known as the "Silverthorn Ranch," at an annual rental of $350, of which, for the first year, the sum of $116.66 was paid on the day of the execution of the indenture, and the balance payable on the first day of November, 1921. By this lease the second party (Mrs. Wilson) was "granted the privilege of cutting cordwood on the east 80 acres of said premises," she agreeing that "she will, during the term of this lease, cut not less than forty acres of all timber standing on either the north or south forty acres of the east eighty acres of said described premises, but not in the center thereof, at her option." It was further stipulated in the lease that "said cutting is to begin in the wood-cutting season, in the fall of 1921 and 1922, and not later than November 1st, and shall continue during the entire cutting season of each year of said term. Said second party agrees that not less than forty acres shall be cut during the year of 1921 and not less than forty acres cut during the year 1922. The party of the second part agrees to pay the parties of the first part seventy-five cents per cord, 4' x 4' x 8', for all pine and other soft wood so cut and one dollar and fifty cents per like cord for all oak and other hard wood so cut. All cord wood to be measured and paid for before being sold or removed from the premises." The lease proceeds:

"It is understood that the foregoing provisions relating to the cutting and removal of wood on said East eighty (80) acres of the above described premises is one of the material considerations for making of this lease, and any default in the performance of the specified terms and conditions by said second party shall, upon notice to them, give the first parties the right to terminate this lease, and to re-enter all of said premises and to remove all parties therefrom, and all considerations paid hereunder may thereupon, at the option of the first parties, be retained by them as settled and liquidated damages, it being hereby expressly agreed that it is

impossible to ascertain the actual damage resulting from any breach hereof, and time is hereby expressly made the essence of this agreement.''

It appears that the lessee failed to pay the rent specified in the lease as required by that instrument, and also failed to pay the lessor for wood cut on the premises as likewise required. After some discussion of and negotiations concerning these defaults on the part of the lessee, the parties, on November 19, 1921, entered into an agreement, reduced to writing, whereby the lessee surrendered her lease to the premises to the lessors. On the same date the lessors executed in writing a release of the surrender of the lease. These documents were deposited in escrow in a bank in the city of Sacramento, with instructions that, if the lessee, on or before December 20, 1921, paid the amount of the rent in which she was then in arrears and stumpage, and performed some other acts not pertinent to this inquiry, the surrender of the lease by her was to be canceled or returned to her and she to continue in possession of the premises under the lease as originally drafted and executed. The written release of the lessee from the effect of her surrender of lease set forth the instructions so given the bank. The lessee failed to meet the terms and conditions upon which her surrender of the lease was to cease to be of force. It appears, however, that the lessee and her husband (the former having subsequently to the execution of the lease intermarried with one Myron E. Sage) continued to hold possession of the premises, and that the plaintiffs (lessors) served or caused to be served upon Mrs. Wilson (lessee) a written notice, dated March 28, 1922, stating that rent in the sum of $233.44 was long past due, that the lessee had failed to pay for the wood cut by her on the premises, the sum due lessors for such wood being the sum of $255, and that the lessee in other respects breached the terms and conditions of the lease and demanding that the latter pay the rent due and for the wood cut within three days from the date of the service of said notice upon them, or, in default of such payments being so made, that they deliver to the lessors possession of the premises; that, in case the lessee, within the time stated in said notice, failed to comply with the one or the other of the alternatives so specified, the lessors would institute appropriate legal proceedings to oust them of such possession. A

few weeks prior to the time of the service of this notice, an attachment, issued in a case brought against the lessee and her husband by one Keefe, in the superior court of Sacramento County, was levied on the wood cut by the lessee under the terms of her lease of the premises, and which lien still subsisted at the time of the service of said notice. It also appears that on the nineteenth day of March, 1922, the lessee and her husband filed a petition and schedule in bankruptcy in the United States district court for the northern district of California, and on the same day were adjudicated bankrupts; that thereafter, at a meeting of the creditors of the bankrupts, the defendant Prior was appointed trustee of the estates of said bankrupts.

It further appears that the lessee and her husband had given a chattel mortgage on some stock then on the premises in question to two parties by the names of LeRoy and Bell, to secure a certain loan of money by the latter to the former and evidenced by a promissory note. This note, it seems, had fallen due, and proceedings to foreclose the mortgage instituted. LeRoy and Bell, pending the determination of the foreclosure proceedings, placed one Garvey in charge of the mortgaged stock on said premises. On the eighteenth day of April, 1922, the lessee and her husband packed all their household belongings and departed from the demised premises. On the twentieth day of April, 1922, the plaintiffs put said Garvey in charge of said premises. On the twenty-ninth day of April, 1922, said Prior, as trustee in bankruptcy of the estate of the lessee and her husband, sold to the defendant R. S. Philpot all of the cut wood on the leased premises, the attachment lien on the wood, above spoken of, having been released. Said Philpot thereupon proceeded to remove said wood from said premises and had taken therefrom six cords of wood when the plaintiffs brought the present action for an injunction to prevent the defendants, their agents, and assigns from removing any of said wood from said premises and for judgment for the value of the wood removed therefrom by said Philpot.

The complaint, after stating that the plaintiffs are the owners of the demised premises, and also of 177 cords of oak wood and 23 cords of pine wood, located on said premises, alleges as follows:

"That on the 4th day of May, 1922, the above named defendants forcibly entered upon said premises and forcibly removed some of said wood from said premises; that plaintiffs refused to allow defendants possession of said wood and refused to allow them to remove same, but defendants over the objection of plaintiffs, continued to remove said wood; that defendants threaten to and will, unless restrained by this Court, remove all of said wood from said premises and will deprive plaintiffs of the possession and use of same.

"That the exact amount of said wood is unknown to plaintiffs, at this time; that defendants are now removing said wood from said premises and hauling the same to the city of Sacramento, and there disposing of the same; that unless defendants are immediately restrained from so entering upon said premises and hauling said wood, plaintiffs will suffer great and irreparable damages; that such damages will result to plaintiffs before notice of application for an injunction can be served upon defendants.

"That the said pine wood is of the value of $5.00 a cord; that the value of said oak wood is $10.00 per cord."

An injunction *pendente lite* was issued upon the averments of the complaint and served upon the defendants.

A demurrer, on both general and special grounds, was interposed by the defendants to the complaint and the same overruled by the court, whereupon the defendants filed an answer in which they specifically denied all the material allegations of the complaint and affirmatively alleged that the lessee under the lease in question and her husband were, at all times mentioned in the complaint, owners of 100 cords of wood on said premises, that they petitioned to the United States district court to be declared and adjudicated bankrupts, that they were so declared and adjudicated, that the creditors appointed defendant Prior trustee of said bankrupts, and that said Prior, as such trustee, on the twenty-ninth day of April, 1922, sold to defendant Philpot all said wood, and that the latter "is now the owner of and entitled to the possession of all said wood."

The court found in favor of the plaintiffs, and upon its findings rendered and caused to be entered judgment, making the temporary injunction permanent as prayed for and awarding judgment against Prior and Philpot in favor of plaintiffs for the sum of $30 as for the value of the six cords

of wood which it was found that Prior and Philpot wrongfully removed from the premises, as hereinabove indicated.

The defendants have appealed from said judgment and support the appeal by a record prepared according to the requirements of the so-called alternative method.

The points made in support of the appeal are: 1. That the complaint does not state facts sufficient to show that the plaintiffs will or would suffer irreparable injury by reason of the alleged threatened acts of the defendants; 2. That the plaintiffs have an adequate remedy in the ordinary course of law; 3. That the evidence is insufficient to support the findings.

[1] 1. The defendants declare that there is no other statement in the complaint looking to equitable relief by way of injunction than that involved in the averment that the plaintiffs will, unless the defendants are enjoined from removing the wood, suffer "irreparable damages." Of course, such a statement, taken alone, is a mere legal conclusion, and, in the absence of a statement of facts substantiating or supporting it, would not justify a court of equity in extending its aid by way of preventive relief to a suitor for such aid. [2] The complaint, however, goes further than merely stating the legal conclusion referred to. It alleges that the plaintiffs were and are the owners and in possession of a specified quantity of wood, located on land belonging to them, and that the defendants have removed a portion of said wood from said land and threaten to move all of said wood and dispose of the same. This clearly presents a case in which a continuing trespass will be suffered by the complainants. We can think of no case in which the interposition of the injunctive power of a court of equity could more appropriately be invoked.

[3] 2. Counsel say, however (this is the point they secondly urge and which is virtually considered above), that the plaintiffs may resort to the action of claim and delivery and so recover the wood as it is from time to time taken from them, and thus they are afforded an adequate remedy at law. The complaint states that the defendants would, unless restrained from so doing, remove the wood and dispose of it, which averment means that they intended to put it on the market and sell it to such persons as might desire to buy it. It is hence obvious

that it would be necessary to bring an action in claim and delivery against each of such persons as might purchase a portion of the wood from the defendants. The same would be true as to any action at law which might be brought to obtain, not the specific property, but only the value thereof. [4] The case here clearly comes within the rule as it is announced by Professor Pomeroy, in his work on Equity Jurisprudence, section 1357, as follows: "If the trespass is continuous in its nature, *if repeated acts of wrong are done or threatened,* although each of these acts, taken by itself, may not be destructive, and the legal remedy may therefore be adequate for each single act if it stood alone, then also the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions. In both cases the ultimate criterion is the inadequacy of the legal remedy." (See, also, *Blevins* v. *Mullally,* 22 Cal. App. 519 [135 Pac. 307], citing *Daubenspeck* v. *Grear,* 18 Cal. 447; *Kellogg* v. *King,* 114 Cal. 378 [55 Am. St. Rep. 74, 46 Pac. 166]; *Mendelson* v. *McCabe,* 144 Cal. 233 [103 Am. St. Rep. 78, 77 Pac. 915]; *Danielson* v. *Sykes,* 157 Cal. 686 [28 L. R. A. (N. S.) 1024, 109 Pac. 87]; *Sailors' Union etc.* v. *Hammond L. Co.,* 156 Fed. 454 [85 C. C. A. 16]; *Northern Pac. Ry. Co.* v. *Cunningham,* 103 Fed. 708.)

The defendants cite the following cases as sustaining their view of the complaint: *DeWitt* v. *Hays,* 2 Cal. 463; *Gregory* v. *Hay,* 3 Cal. 332; *Hager* v. *Schindler,* 29 Cal. 47; *Waldron* v. *Marsh,* 5 Cal. 119; *Mechanics' Foundry* v. *Ryall,* 75 Cal. 601 [17 Pac. 703]. None of these cases is in point here, as a perusal of the opinions therein will readily disclose.

[5] 3. The above statement of the facts is sufficient to show that the findings are well supported. As already shown, under the agreement of lease, the lessee was to forfeit her right to the possession of the premises thereunder upon her failure to comply with any of the vital terms thereof, and the lessors were thereupon entitled not only to enter into the possession thereof but, as stated, to retain whatever money that might have been paid by the lessee to them on account of the rent and also all the wood which had been cut, and for which the lessee had not paid plaintiffs at the rate stipulated by the lease. As seen, she was given by plaintiffs ample notice of her several defaults under the lease, and an opportunity after such defaults to comply with

her agreement and so proceed according to the terms thereof. She did not avail herself of the privilege thus granted to her, but, to the contrary, not only voluntarily surrendered the lease and all the considerations thereof which had, in part, been performed by her, but later abandoned her possession of the premises and so forfeited all rights she might have claimed under the lease had she complied with the terms and conditions thereof. Under all these circumstances, the right to the possession of the premises and the considerations for the lease which had, in part, been performed by her, at once, or upon the happening of all those acts, reverted to the plaintiffs. **[6]** The fact, if it was a fact (and it does not directly appear from this record that it was a fact), that the lessee included within her schedule of assets and liabilities in bankruptcy the wood in question did not and could not have the effect of divesting plaintiffs of the right to the possession or the possession of the wood. The lessee, it is quite obvious, had no right to include as among her assets in said schedule the property of others, and if she did do that with respect to the wood in question, the plaintiffs were nevertheless legally authorized to hold such possession, until the trustee established, if he could, by a proper proceeding in court (by claim and delivery, for instance), that he was entitled by virtue of his office as such trustee to the possession of the wood by reason of the lessee's ownership thereof at the time she petitioned the federal court to be adjudicated a bankrupt.

In our opinion this appeal is wholly devoid of merit.

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.