No. 90-527

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

JAMES DeMERS and DORIS DeMERS;
PHILIP J. POSTON and SHIRLEY M. POSTON;
EDWARD J. SMOSMA, THELMA RUTH SMOSMA;
CLYDE I. LAUFER and ALTA LAUFER,

      Plaintiffs and Appellants,

  v.

RONCOR, INCORPORATED,

      Defendant and Respondent.

FILED

JUL - 2 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Tenth Judicial District,
                In and for the County of Judith Basin,
                The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          James T. Harrison, Jr.; Harrison, Loendorf & Poston,
          P.C., Helena, Montana

      For Respondent:

          William P. Driscoll and Ward A. Shanahan; Gough,
          Shanahan, Johnson & Waterman, Helena, Montana

Submitted on Briefs: April 25, 1991

Decided: July 2, 1991

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The appellants, owners of lots in a subdivision known as Sapphire Village, appeal from the Opinion and Order of the District Court of the Tenth Judicial District, Judith Basin County, granting the respondent's motion to dismiss. We affirm.

The appellants raise three issues on appeal:

1. Whether the respondent is judicially estopped from barring the appellants access to hand mine on respondent's sapphire mining claims.

2. Whether the issues in a prior federal court case were identical to the issues raised in the case at bar, such that this litigation is barred by res judicata.

3. Whether the interests of justice allow res judicata to be applied under the circumstances of this case.

The appellants are lot owners in Sapphire Village, a subdivision outside Utica, Montana. The respondent, a California corporation, is the owner of the "Yogo Sapphire" bearing dike west of Sapphire Village. The "Yogo Dike" is a geological formation containing deposits of sapphire-bearing ore. Sometime in 1968, the respondent's predecessor in interest, Sapphire Village, Inc., subdivided the real property it owned adjacent to the Yogo Dike into lots ranging from 10,000 square feet to approximately one-third of an acre. The appellants purchased these lots during the 1969 through 1981 time period from Sapphire Village, Inc. or its successor in interest, Roncor, Inc., the respondent herein.

Prior to the sale of the lots, Sapphire Village, Inc., filed

2

a public "Declaration of Restrictive Covenants, Reservations, Restrictions, and Grant of Mining Permit" and recorded the same in Judith Basin County, Montana. The Declaration stated that the covenants were to run with the land; the appellants purchased their respective lots subject to these covenants. The Grant of Mining Permit provided that each of the lot owners had the right to "hand dig" for sapphires in designated areas on five specified patented lode mining claims on the Yogo Dike. These five claims were all located in Section 23.

On April 1, 1980, Sapphire Village, Inc., which had since merged into the corporate entity of Sapphire International Corporation,[1] conveyed its interest in the mining claims it owned on the Yogo Dike to a Colorado company known as Intergem. Commencing in 1982, Intergem engaged in extensive mining activities which included strip mining of the five mining claims that were the subject of the Grant of Mining Permit.

In August, 1988, the appellants brought a class action suit for damages, contending that Roncor had breached the terms of the Declaration and Grant of Mining Permit when it conveyed to Intergem the right to commercially mine the Yogo Dike. The suit was tried to a jury in February, 1990, in federal district court. The major issue presented was whether or not Roncor had breached the terms of the Declaration and Grant of Mining Permit. The appellants contended that the Grant of Mining Permit gave them an exclusive

---

[1] In 1986, Sapphire International Corporation changed its corporate name to Roncor, Inc.

right to mine. Roncor, however, maintained that the appellants held only a non-exclusive right to mine and that there existed an independent right to commercially mine the claims which was expressly reserved to Sapphire Village, Inc. and its successors in interest. The jury returned a verdict in favor of the appellants and awarded damages for the loss of the mining rights. Judgment was entered accordingly.

During that trial, Ronald Kunisaki, president of Roncor, gave certain testimony that the appellants contend produced a new cause of action. The appellants filed their complaint in this matter on June 8, 1990, seeking damages for interference with certain hand digging mining rights and an injunction to prevent future interference with these rights. The District Court issued its Opinion and Order on August 23, 1990, in which it granted the respondent's motion to dismiss the complaint. The District Court held that the appellants had already been awarded damages for the "total defeat" of their digging rights and that this action was barred by res judicata. The appellants appeal.

The first issue raised by the appellants on appeal is whether the respondent is judicially estopped from barring access by the appellants to hand mine on the respondent's mining claims.

During the prior federal trial between these parties, Ronald Kunisaki testified that, although the covenant attached to the five claims located in Section 23, it was his view that Roncor could in its discretion designate other areas as substitutions for the Section 23 claims. A portion of his testimony was as follows:

Q: [By Mr. Harrison] . . . Have you transferred any

4

permanent rights to hand diggers to dig anywhere except in Section 23?

A: [By Mr. Kunisaki] Yes, by virtue of the covenants.

Q: And can you tell me from the covenants, then, and from your testimony, where that permanent right allows them to dig?

A: The covenants, as I interpret them, give them the permanent right to hand dig on designated areas, so they do have a permanent right to dig on those designated areas.

Q: And the, your interpretation of that is that you can tell them anywhere within the mine?

A: Correct.

The appellants contend that this testimony demonstrates that the respondent's position during the federal trial was that the appellants' hand mining rights were permanent and mine-wide. They argue that, under the principle of judicial estoppel, the respondent is now prevented from treating the appellants' mining rights as anything but permanent and mine-wide.

Following the close of the federal trial, the respondent advised all members of the plaintiff class by letter that any mining rights they had previously owned by way of the Grant of Mining Permit were cancelled and had reverted to Roncor, Inc. The appellants argue that the respondent is judicially estopped from changing its position held at trial and cannot now cancel the appellants' mine-wide mining rights. The only mining rights they should lose, the appellants argue, are the five claims in Section 23.

Judicial estoppel is generally defined as the rule that a party is bound by his or her judicial declarations and may not

5

contradict them in a subsequent action or proceeding. 28 Am.Jur.2d., Estoppel and Waiver, § 71, pgs. 700-701, (1966). The elements required to support judicial estoppel are as follows: (1) The party being estopped must have knowledge of the facts at the time the original position is taken; (2) the party must have succeeded in maintaining the original position; (3) the position presently taken must be actually inconsistent with the original position; and (4) the original position must have misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party. Colwell v. City of Great Falls (1945), 117 Mont. 126, 157 P.2d 1013 (overruled on other grounds). The rule of judicial estoppel does not apply to a change of position regarding matters of law, nor does it apply where the knowledge or means of knowledge of both parties is equal. Colwell, 117 Mont. at 139, 157 P.2d at 1019.

In the case at bar, the appellants allege that Kunisaki's testimony served to define the appellants' mining rights as including claims other than those provided for in the Grant of Mining Permit. However, the testimony in question constituted only Kunisaki's own interpretation of the terms of the Declaration and Grant of Mining Permit. The true legal interpretation of the Grant of Mining Permit is unchanged and remains as stated: the five claims in Section 23. Kunisaki's testimony did not create any new or additional rights to which the appellants are entitled.

Kunisaki's testimony amounted to an attempt to persuade the jury to interpret the written instrument in such a way that would likely benefit Roncor in the lawsuit. The jury returned a verdict

6

in favor of the appellants, indicating that it was unpersuaded by Kunisaki's interpretation of the instrument.

As the United States Supreme Court stated in Sturm v. Boker (1893), 150 U.S. 312, 336, 14 S.Ct. 99, 107, 37 L.Ed. 1093, 1102, where a position taken in a judicial proceeding is found to be the expression of an opinion as to the law of a contract, and not a declaration or admission of a fact, a party is not estopped from subsequently taking a different position as to the true interpretation of the written instrument. The District Court correctly found that Kunisaki's testimony merely offered an interpretation of the written instrument and created no additional mining rights for the appellants. Kunisaki's change of position regarded a matter of law and, consequently, judicial estoppel does not apply.

Even if we were to assume Kunisaki's testimony amounted to a factual declaration, the elements of judicial estoppel as set forth above have not been met. Roncor failed to maintain its original position and, although acquiring a judgment in its favor is not always necessary to satisfy this element, the party against whom the estoppel is sought must have at least been successful in arguing its original position against the party asserting the estoppel. The appellants contend that Roncor was in fact successful in this regard. It is the appellants' position that Kunisaki's testimony influenced the jury to award less damages than it would otherwise have awarded. This argument, however, is merely speculative conjecture as to the jury's inner thought process and is factually unsupported.

Moreover, the appellants have failed to demonstrate in what manner, if any, they have been misled by Kunisaki's testimony. In any event, allowing Roncor to take the position that all appellants' mining rights have been terminated does not injuriously affect the appellants, because the appellants already have been compensated for their loss.

The District Court is correct in its conclusion that judicial estoppel is not applicable to the facts of this case.

The remaining two issues concern the principles of res judicata and will be discussed together.

The appellants argue that res judicata cannot be applied in this case for two reasons. First, they contend that all the necessary elements are not present. Second, they argue that even if the respondent has satisfied all the elements, res judicata should not be applied for reasons of fundamental justice.

The four element test we apply in determining whether or not a second action is barred by res judicata is as follows: the parties or their privies must be the same; the subject matter of the action must be the same; the issues must be the same; and the capacities of the persons must be the same in reference to the subject matter and to the issues between them. Baertsch v. County of Lewis and Clark (1986), 223 Mont. 206 at 209-210, 727 P.2d 504 at 506. The only element in dispute is whether the prior federal action involved the same issues as are presented in the case at bar.

The appellants argue that the issue presented to the jury in the federal case was the question of damages due the appellants as

a result of the loss of the <u>one mile portion</u> of mining rights on Section 23; in other words, the loss is characterized as a <u>partial</u> loss. They contend that the issue now before the Court concerns the <u>remaining mining rights</u> referred to in Kunisaki's earlier testimony; now characterized as a <u>complete</u> loss. This distinction is entirely hypothetical. The Grant of Mining Permit provided the appellants with mining rights on the one mile portion of Section 23 and nothing more. The "additional rights" purportedly created by Kunisaki's testimony which the appellants now attempt to litigate are nonexistent. Notwithstanding the "partial loss/ complete loss" distinction the appellants attempt to make above, we find the issue presented in the federal case to be identical with the one presented at bar.

The appellants attempt to create rights that never existed under the Grant of Mining Permit and then litigate those nonexistent rights. As we have previously stated, Kunisaki's testimony did not amount to the creation of additional mining rights. The only mining rights that have ever existed are those on Section 23, and they were the subject of the prior federal action. The mining rights at issue in the federal action that the appellants attempt to characterize as a partial loss, were in fact a complete loss. Therefore, the "complete loss of mining rights" issue they are attempting to litigate in this case does not exist and the "partial loss" (which was actually the complete loss) has been disposed of in the federal action.

The appellants argue that this Court, for reasons of fundamental justice, should not apply res judicata even if

identical issues are involved in the first and second actions. It is their contention that it would be "a grave injustice" to prevent the appellants from seeking relief for the loss of _all_ mining rights. Again the appellants are assuming that they have mining rights in addition to those provided in the Grant of Mining Permit. This is not the case. There is no injustice in preventing the appellants from seeking damages for the loss of rights they never had.

We hold that judicial estoppel is not proper under the facts of this case and, as such, this case is barred by res judicata.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10

Justice Terry N. Trieweiler dissenting.

I concur with that part of the majority's opinion which concludes that the principle of judicial estoppel is not applicable to the defendant's conduct.

I dissent from that portion of the majority's opinion which concludes that the present action by the plaintiffs is barred by *res judicata*.

As has been correctly pointed out in the majority opinion, before *res judicata* bars a second action the subject matter and the issues must be found to be the same as in a prior action. However, in this case, neither the subject matter nor the issues were the same.

In the action filed by the plaintiffs in August 1988, they sought damages for interference with their hand mining rights located in Section 23 of the Yogo Mine. The entire basis for their claim was the following allegation:

> The transfer of ownership of the mining claims to Intergem, Inc., by the defendant for the purpose of commercially mining the Yogo Sapphire-bearing dike, and the subsequent commercial mining of the Yogo Sapphire-bearing dike, totally defeated the right and privilege that Plaintiffs had to hand dig in the aforesaid mining claims, namely, the Clayberg, Gunn, Hoover, Baker, and Snowdrift, located in Section 23.

The only section for which damages were sought in the prior action was described as follows in the prayer for relief filed in that case:

11

WHEREFORE, Plaintiffs request for themselves and all members of the class that the Court:

\* \* \* \*

2. Adjudicate and declare the rights of the class members to damages for loss of hand digging rights in the Yogo Sapphire ditch in Section 23, as set forth in this complaint . . . .

In their original suit, plaintiffs sought no damages for loss of mining rights in any other section of the Yogo Mine.

In the complaint which commenced this action, plaintiffs sought a declaratory judgment determining their mining rights in the other sections of the Yogo Mine. Their complaint specifically alleged as follows:

13. That this suit is brought to obtain declaratory judgment under the Uniform Declaratory Judgments Act (§ 27-8-101, et seq., MCA) to declare and adjudge the following:

(a) that the hand digging rights of the Plaintiffs herein are applicable under the provisions of the covenants to all six sections of the Yogo Mine . . . .

Furthermore, the prayer for relief in this action sought entirely different relief than was sought in the prior action. It sought the following relief:

WHEREFORE, Plaintiffs pray for the following relief:

\* \* \* \*

2. For a declaratory judgment finding and determining that Plaintiffs' hand digging rights, subject to the terms of the covenants, are mine-wide throughout the Yogo mine, and applicable to all six sections of the Yogo mine . . . .

12

Since plaintiffs' first cause of action sought damages for interference with their mining rights in only Section 23, and since plaintiffs' second cause of action sought a determination of their hand mining rights in all other sections of the Yogo Mine, neither the subject matter nor the issues to be resolved by the court were identical. Therefore, this was not an appropriate situation for the application of the doctrine of *res judicata*.

The majority opinion, while affirming the District Court on the basis of *res judicata*, concludes that it makes no difference that plaintiffs' second claim claims different mining rights than those claimed in the first action. The majority concludes, as a matter of law, based on its interpretation of the covenants between the parties, that plaintiffs did not have any mining rights in any section other than Section 23. However, that issue was never decided by the District Court; and, the plaintiffs have never had the opportunity to present evidence in support of their claim to rights outside Section 23 because their claim was summarily dismissed, based on the principle of *res judicata*.

The majority has simply made a factual finding based upon its review of the record without ever giving the plaintiffs an opportunity to supplement the record during an evidentiary hearing. That is not the function of this Court. Therefore, I dissent from the majority opinion. I would reverse the District Court's grant of summary judgment (although it was not denominated as such), and

remand this case to the trial court for further proceedings to determine the merits of plaintiffs' claim that they have mining rights in other sections of the Yogo Mine.

_____
Justice

14