ERVIN MELCHER, APPELLEE, V. THE BANK OF MADISON, APPELLANT.

539 N.W.2d 837

Filed November 17, 1995.   No. S-93-670.

Daniel A. Fullner, of Moyer, Moyer, Egley, Fullner & Warnemunde, for appellant.

Vince Kirby for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. INTRODUCTION

In this conversion action, the district court, pursuant to the verdict, entered judgment in the amount of $28,000 in favor of the plaintiff–appellee, Ervin Melcher, and against the defendant–appellant, The Bank of Madison. The bank thereupon appealed to the Nebraska Court of Appeals asserting, in summary, that the district court erred in overruling the bank's motion for judgment notwithstanding the verdict or a new trial because (1) it was entitled to the directed verdict it sought at the close of all the evidence and (2) the district court incorrectly instructed the jury. The Court of Appeals reversed the judgment of the district court, *Melcher v. Bank of Madison*, 3 Neb. App. 665, 529 N.W.2d 814 (1995), and Melcher thereafter successfully petitioned this court for further review. We now reverse the judgment of the Court of Appeals and remand with direction.

## II. SCOPE OF REVIEW

A verdict is not to be set aside on appeal unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *Hoeft v. Five Points Bank, ante* p. 772, 539 N.W.2d 637 (1995); *Wolf v. Walt*, 247 Neb. 858, 530 N.W.2d 890 (1995).

## III. FACTS

Melcher's son owned a John Deere 4430 tractor, which had a number of mechanical deficiencies. As a result, the son considered buying a John Deere 4450 tractor to replace the 4430 unit, but concluded that the 4450 version was too expensive for him.

Melcher then traded in the son's 4430 for a 4450 at a

purchase price of $39,500.50 plus sales tax of $857, for a total of $40,357.50. Melcher signed the purchase contract and was allowed $15,000 for the trade–in of the 4430, but a promissory note having a balance of $7,693 remained due on the 4430, so Melcher only received a credit of $7,307. In addition, Melcher paid $5,000 cash on the purchase price. Thus, a balance of $28,050.50 remained due on the 4450. Melcher signed a promissory note to John Deere for that amount, and he eventually paid it in full.

Although Melcher had the 4450 delivered to the son, Melcher testified that he never gave title to the unit to the son or anyone else and that he maintained possession of it and allowed his family members to use it any time they wanted, free of charge. Nonetheless, the son stated that he and Melcher had agreed that if the 4450 needed repairs, the son would pay for them.

The testimony as to how Melcher came to trade in the 4430 is in conflict. Melcher testified that the son told him to trade it in on the 4450. At one point, the son stated that he was surprised by the arrival of the 4450 and that he wished Melcher would have told him about the trade–in, but at another point, stated that he "gave" the 4430 to Melcher to purchase the 4450. The record does not explain what the son meant by the word "gave."

Following Melcher's purchase of the 4450, he had the son sign promissory notes in the amount of $28,000 during each of 7 successive years. Apparently, the son made no payments on the notes, but he did pay Melcher $5,000 from the proceeds of a loan he obtained from the bank as the final payment on the 4430.

Melcher did not claim depreciation of the 4450 on his tax returns and did not list it as an asset in the financial statements he supplied the bank. The son did both and, when filing for protection under chapter 12 of the U.S. Bankruptcy Code, listed the 4450 in his schedule of assets and named Melcher as a creditor. Melcher did not file any objection to the son's listing of the 4450 as his property.

The son had given a security interest in all of his farm equipment, including the 4430 and after–acquired property, to

the bank during all pertinent times. Thus, when Melcher converted his chapter 12 bankruptcy proceeding to a proceeding under chapter 7 of the code, the bank sought, and was granted, relief from the automatic stay in order to bring an action in replevin to recover the son's farm equipment. After obtaining such judgment, the bank repossessed the 4450 and, after making some repairs, sold the unit at auction.

This suit then followed. Although Melcher testified that at the relevant time the 4450 was worth $40,000, there was evidence that it was sold at the auction for $31,100.

## IV. ANALYSIS

It is true that a motion for judgment notwithstanding the verdict may be granted when the movant's previous motion for directed verdict, made at the conclusion of all the evidence, should have been sustained. *Getzschman v. Miller Chemical Co.*, 232 Neb. 885, 443 N.W.2d 260 (1989). See, also, *Hoeft v. Five Points Bank, ante* p. 772, 539 N.W.2d 637 (1995).

### 1. DIRECTED VERDICT

The first question then is whether the bank was, as it claims, entitled to a directed verdict at the close of all the evidence because of Melcher's conduct and because of the status of the evidence. In this connection, it is to be recalled that in reviewing the action of a trial court, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. The party against whom the motion is directed is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably be deduced from the evidence. In order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion from the evidence. *Wolf v. Walt*, 247 Neb. 858, 530 N.W.2d 890 (1995). See, also, *Hoeft, supra.*

### (a) Conduct

The bank urges it was entitled to a directed verdict because

as Melcher failed to object to the son's listing of the 4450 as one of his assets in his bankruptcy proceeding, Melcher became judicially estopped from asserting an ownership interest in the 4450 and because pursuant to the U.S. Bankruptcy Code, title to the 4450 passed from the son to the bankruptcy estate.

### (i) Judicial Estoppel

The doctrine of judicial estoppel holds that one who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir. 1982); *DeMers v. Roncor, Inc.*, 249 Mont. 176, 814 P.2d 999 (1991). The doctrine protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. *Reynolds v. C.I.R.*, 861 F.2d 469 (6th Cir. 1988). It has been said that unlike equitable estoppel, judicial estoppel may be applied even if detrimental reliance or privity does not exist. *Edwards, supra*. However, the doctrine is to be applied with caution so as to avoid impinging on the truth–seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement. See *Reynolds, supra*. Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists. *Edwards, supra*.

While we adopt the doctrine, it has no application here. Melcher did not successfully or unequivocally assert in the son's bankruptcy proceeding that the 4450 belonged to the son or that Melcher himself had no ownership interest. Indeed, as Melcher did not file an objection, the issue of ownership of the 4450 was, in fact, never litigated and was never clearly in issue. See *In re Greene*, 145 B.R. 714 (Bankr. S.D. Ga. 1992) (objection to allowance of claim filed in accordance with 11 U.S.C. § 502 (1988) and relevant bankruptcy rules clearly places in issue allowance or disallowance of claim). Consequently, Melcher's failure to object to the son's listing of the 4450 as his does not judicially estop Melcher from asserting an ownership interest in the 4450 in this action. See, *In re*

*Montgomery*, 80 B.R. 385 (Bankr. W.D. Tex. 1987) (failure of creditor to object to debtor's exemptions did not operate as estoppel preventing creditor from raising debtor's entitlement to exemption in debtor's lien avoidance action); *Matter of Simicich*, 71 B.R. 48 (Bankr. M.D. Fla. 1987) (defendant's initial failure to assert ownership interest in items of personal property did not operate as estoppel that could be invoked to divest him of title and create title in debtor); *Eames v. Philpot*, 72 Cal. App. 151, 236 P. 373 (1925) (debtor's scheduling of chattel in bankruptcy did not divest third–party owners of right of possession).

### (ii) Operation of Bankruptcy Code

While it is true that pursuant to 11 U.S.C. § 541 (1994) of the U.S. Bankruptcy Code the estate comprises all the legal and equitable interests in property of a debtor, that section "does not address the threshold questions of the existence and scope of the debtor's interest in a given asset." *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986). These questions are resolved pursuant to nonbankruptcy law. *Id.*; *Collins v. Federal Land Bank of Omaha*, 421 N.W.2d 136 (Iowa 1988).

### (b) Status of Evidence

The bank also urges the evidence was insufficient to sustain the verdict. In assessing that claim, we recall the corollary to the rule set forth in part IV(1) above concerning the circumstances under which a directed verdict at the close of all the evidence may be granted; that is, that on a motion for judgment non obstante veredicto, or notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. *Critchfield v. McNamara, ante* p. 39, 532 N.W.2d 287 (1995); *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993).

First, the bank urges that as the amount of the verdict was less than Melcher's opinion as to the value of the 4450, there is no evidence to support that amount. The argument overlooks the

evidence as to the price at which the unit was sold at auction; that evidence was received without objection. The applicable rule is that where evidence is admitted generally, it may be considered for any purpose for which it is relevant and competent. See *Baxter v. National Mtg. Loan Co.*, 128 Neb. 537, 259 N.W. 630 (1935). That being so, the verdict amount, being within the range of the evidence, is adequately supported by the evidence. *Sayer Acres, Inc. v. Middle Republican Nat. Resources Dist.*, 205 Neb. 360, 287 N.W.2d 692 (1980) (condemnation award within range of evidence not clearly wrong).

Additionally, the bank argues that the evidence does not support a finding that Melcher owned the 4450. While it is true that reasonable minds could well conclude from the evidence that the son owned the unit, it cannot be said that reasonable minds could not conclude that Melcher owned it. Melcher had testified that he bought the 4450, that he was in continuous possession of it, and that he had never given or transferred title to anyone. The credibility of a witness is an issue for the jury. *Roberts v. Weber & Sons, Co., ante* p. 243, 533 N.W.2d 664 (1995).

Viewed in the light most favorable to Melcher, the evidence establishes a prima facie case for conversion, and the question was thus properly submitted to a jury. See *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992) (plaintiff in conversion must show (1) immediate right to possession of property and (2) its wrongful possession by tort–feasor).

### (c) Resolution of Claim

Accordingly, the bank was not entitled to a directed verdict.

### 2. JURY INSTRUCTIONS

The foregoing determination leads us to a consideration of the bank's claim that the district court erred in its instructions to the jury by failing to instruct as the bank requested with regard to five specific matters and in misstating the law in an instruction given on its own motion.

### (a) Instructions Refused

The bank first complains of the district court's failure to give

its tendered instruction defining the issues and the facts the bank had the burden to prove and its tendered instruction concerning the equitable estoppel defense it asserted based upon Melcher's alleged knowledge of the security interest the son gave the bank. However, although the district court did not use the bank's tendered instructions concerning those matters, it properly instructed the jury on the applicable law concerning them. It is the meaning of an instruction, not its phraseology, that is crucial. *Scharmann v. Dayton Hudson Corp.*, 247 Neb. 304, 526 N.W.2d 436 (1995). Thus, it is not error to refuse to give a requested instruction if the substance of the request is included in the instructions given. See *id*. See, also, *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993); *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991).

Next, the bank complains that the district court failed to define "conversion," as requested. While the district court did not instruct that conversion means "any distinct act of dominion, wrongfully asserted over another's property in denial of, or inconsistent with that person's rights," as the bank asked, the district court did instruct that the case involved a claim for the "wrongful taking" of the 4450. All jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Hamernick v. Essex Dodge Ltd.*, 247 Neb. 392, 527 N.W.2d 196 (1995). While a more complete definition might have been desirable, within the context of the facts in this case, it cannot be said that the lack of such constituted prejudicial error necessitating a reversal.

Additionally, the bank tendered two instructions defining promissory notes having certain characteristics as negotiable instruments. The bank argues in that connection that if the jury had been instructed as to the definition of a promissory note and that a promissory note is a negotiable instrument, it might have found that the promissory notes given by the son to Melcher were negotiable instruments and, therefore, adequate consideration for the sale of the 4450. However, the negotiability of a promissory note does not affect whether it constitutes adequate consideration for a sale. Consideration is

sufficient to support a contract if there is any detriment to the promisee or benefit to the promisor. *Hecker v. Ravenna Bank*, 237 Neb. 810, 468 N.W.2d 88 (1991). Generally, a court will not inquire into the adequacy of consideration for a contract, inasmuch as consideration based on value of property or performance of a promise is a matter of personal judgment by parties to a contract. *Id.* Consequently, the bank was not prejudiced by the district court's refusal to give the two tendered instructions at issue.

### (b) Instruction Given

Finally, the bank urges that the district court erred by instructing the jury that the bank had the burden to prove it had no knowledge that Melcher claimed a security interest in the 4450. We agree that under the circumstances, the bank's knowledge or lack of knowledge of Melcher's alleged claim of a security interest in the 4450 was not a relevant consideration in determining its liability.

The difficulty from the bank's point of view is that it did not object to that instruction when it was given an opportunity to do so. Absent plain error, failure to object to a jury instruction after it has been submitted for review precludes raising an objection on appeal. *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995); *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994); *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993). Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Long, supra*; *Dike v. Dike*, 245 Neb. 231, 512 N.W.2d 363 (1994); *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993).

Although the instruction now complained of was erroneous, it does not amount to plain error. In order to consider the instruction, the jury would have had to find by a preponderance of the evidence that Melcher was the owner of the 4450 and had an immediate right to possession. Logically, that means the jury

necessarily found that the 4450 did not belong to the son at the time he gave the security interest to the bank and that the bank did not have an immediate right to possession. Therefore, the bank would have failed to carry its burden of proof on the issue of this affirmative defense, regardless of the instruction. Thus, the error in giving the instruction could not cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

### (c) Resolution of Claim

Consequently, the district court's instructions do not provide a basis for reversal.

### V. JUDGMENT

The record failing to support either the bank's claim that it was entitled to a directed verdict or its claim that it was entitled to a new trial because of error in the jury instructions, it necessarily follows that the district court did not err in overruling the bank's motion for judgment notwithstanding the verdict or for a new trial.

The judgment of the Court of Appeals is therefore reversed and the cause remanded to that court with the direction that it affirm the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTION.

GERRARD, J., dissenting.

I respectfully dissent from the result reached by the majority, which reverses the decision of the Nebraska Court of Appeals and affirms the judgment of the district court. In my opinion, the trial court erred in denying the bank's motion for directed verdict at the close of the evidence and in denying the bank's posttrial motions, because there is no competent evidence which would support the conclusion that Ervin Melcher was the owner of the John Deere 4450 tractor eventually sold by the bank in satisfaction of its judgment against Melcher's son, Donald.

A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *Hoeft v. Five Points Bank, ante* p. 772, 539 N.W.2d 637 (1995); *Wolf v. Walt,* 247 Neb. 858, 530 N.W.2d 890 (1995); *Nichols v. Busse,* 243 Neb. 811, 503 N.W.2d 173 (1993); *Kozeny v. Miller,* 243

Neb. 402, 499 N.W.2d 75 (1993). The majority found Melcher's testimony and the testimony of his son to be sufficient evidence in support of Melcher's claim of ownership and possession of the 4450. Essentially, Melcher testified that he purchased the 4450, that he was in continuous possession of the tractor, and that he had never transferred title of the 4450 to anyone. Melcher's claims are not supported by the record.

The record reflects that Melcher was not the sole payor for the 4450. Instead, Melcher was responsible for $5,050.50 of the total $40,357.50 cost of the new 4450. The remainder of the purchase price, $35,307, was attributable to his son. When Melcher negotiated the purchase of the 4450, he received $15,000 for the trade–in of *his son's old John Deere 4430 tractor*. After a promissory note covering the 4430 was paid off, the credit received in exchange for Melcher's son's old tractor was $7,307. Melcher's son, on direct examination as a hostile witness, revealed more of the background of the tractor trade–in and subsequent indebtedness to Melcher in the following colloquy:

[Bank's attorney:] Did you ask your father what he had done with your 4430 tractor?

[Melcher's son:] Yes.

Q. And didn't he tell you that he traded it in?

A. Yes.

Q. And didn't you tell him that you wished he would have told you about that first?

A. Yes.

Q. And didn't you then ask him, well, what am I suppose to do?

A. I was suppose to make payments to him.

Q. My next question is, didn't he say, you make payments on this one?

A. Yes.

Q. Was there anything else that you and your father talked about and discussed concerning the absence of your 4430 tractor and the arrival of the 4450 tractor?

A. He traded that one in for the 4450, and I was out of the 4430.

Q. Did your father later come to you and have you sign

a promissory note?

A. Yes.

In fact, *at the direction of Melcher*, his son signed promissory notes in the amount of $28,000 for the 7 consecutive years prior to trial evidencing his son's indebtedness to Melcher for the purchase of the new 4450. Thus, Melcher's son contributed $35,307 to the purchase of the 4450, which included $7,307 equity in the old tractor and his annually renewed promissory notes to pay Melcher $28,000. Therefore, contrary to Melcher's claim, his son was responsible for paying at least 87 percent of the cost of the new tractor.

Melcher never possessed the 4450 as he claimed. The tractor was delivered directly to Melcher's son, and at all relevant times, his son was the sole possessor of the 4450. Regardless of Melcher's nebulous claim that the 4450 was available for other family members' use "whenever they needed it," Melcher's son testified that he had, in fact, been using the tractor from the date of delivery in June 1986 until the date that the bank repossessed it. Moreover, it is undisputed that Melcher's son was solely responsible for the maintenance of the tractor, he was the only one who claimed depreciation of the tractor on his tax returns, and only he listed the 4450 as an asset on financial statements.

Finally, Melcher claims that he never transferred title of the 4450 to anyone. No record of "title" was offered or received into evidence, and there is good reason for that omission. Melcher never had "title" to the tractor because tractors are excluded as motor vehicles covered by the certificate of title act. Neb. Rev. Stat. § 60–101 et seq. (Reissue 1993). Section 60–102 states that the act shall apply to motor vehicles, commercial trailers, and semitrailers required to be registered under Neb. Rev. Stat. §§ 60–301 to 60–306 (Reissue 1993). Section 60–301(14), now codified at § 60–301(16) (Supp. 1995), states "[m]otor vehicle shall mean any vehicle propelled by any power other than muscular power except . . . (b) farm tractors . . . ." Therefore, Melcher's claim that he never gave title to the tractor to anyone is correct, but only because he never had a title to give any more than his son would have had a title to give to anyone.

In the instant case, the only evidence to support the jury

verdict was the testimony of Melcher and his son—and even their testimony, given the benefit of every inference which can reasonably be deduced from the evidence, does not support the conclusion that Melcher was the owner of the 4450 at the time of its taking by the bank. This case should not have been submitted to a jury. Once Melcher was able to dodge the bullet of a directed verdict, he successfully crafted the legal equivalent of a silk purse out of evidence that equated to something less than a sow's ear.

I would affirm the decision of the Court of Appeals which had reversed the judgment of the district court.