TERRA WESTERN CORPORATION, A CORPORATION, APPELLANT, V. BERRY AND COMPANY, A CORPORATION, ET AL., APPELLEES.

295 N.W.2d 693

Filed August 8, 1980. No. 42915.

Forrest F. Peetz of Peetz and Peetz for appellant.

Jewell, Otte, Gatz, Collins & Domina for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an action by the plaintiff, Terra Western Corporation (Terra), against the defendants, Berry and Company (Berry), a corporation, and Alliance Insurance Companies (Alliance), a corporation, founded on the theory that Alliance converted funds of Terra when Alliance, as insurer of a 1977 corn crop on which Terra held a perfected security interest, paid directly to Robert Temme (Temme), the insured, the amount of a claim arising from destruction of the crop by hail. The defendants filed a demurrer to Terra's amended petition, asserting that it stated no cause of action. The trial court sustained the demurrer. Terra elected to stand upon the petition and the petition was dismissed. Terra then appealed to this court. The question here is, Did the petition state a cause of action for conversion? We find it did not and affirm the action of the District Court.

The material allegations of the petition, other than those pertaining to identification of the parties, are the following: On May 3, 1977, to secure a promissory note

for $35,000, Temme, as mortgagor, executed and delivered to Farmers Agricultural Credit Corporation, a note covering "All crops" on certain tracts of land in Holt County, Nebraska. A copy of the security agreement and financing statement were attached to the petition and incorporated therein. The note, financing statement, and security agreement were later assigned to Terra. The agreement provided, among other things, that the debtor would keep the property insured for the benefit of the secured party and deposit the policy with the insured party. It also provided that "all proceeds of the sale, exchange or other disposition of any of said collateral" be covered by the lien. The security agreement also contained a provision for acceleration of the debt on default and upon various other contingencies, none of which are made applicable by any allegation of the petition. The due date of the promissory note was February 1, 1978.

The petition alleged that the financing statement was duly recorded. There are data set forth in the petition with reference to recordation. Prior to June 1977, Berry sold and delivered to Temme a policy of insurance, insuring Temme against loss or damage to the crop by hail. The policy was issued by Alliance. In July 1977, the crop was damaged by hail and Temme submitted a claim under the policy. Alliance paid the claim, in the amount of $62,250, directly to Temme.

The petition further alleges that, because the security agreement covered "proceeds," the payment by Alliance to Temme "constituted an unauthorized exercise of dominion over those proceeds to the exclusion of ... [Terra's] right, thereby wrongfully converting and disposing of a portion of said 1977 corn crop to their own use to ... [Terra's] damage in the sum of $29,232.60, plus accrued interest ...." The petition prayed for damages in the sum of $29,232.60 and accrued interest.

The petition did not allege that the policy of insurance contained a loss payable clause in favor of the mortgagee, or that Berry or Alliance had any actual notice of Terra's

lien on the crop, or that Alliance made payment to Temme with notice of his contractual agreement to insure the crop for the benefit of the mortgagee.

To sustain its position, Terra relies primarily upon a 1977 amendment of Neb. U.C.C. § 9-306 (Cum. Supp. 1978) defining the term "Proceeds" to include "insurance proceeds representing destroyed collateral." The essence of the argument is that the inclusion of insurance proceeds in the definition places upon an insurer of property the duty of examining the lien records before making payment to an insured. As supporting case authority, Terra cites *First Nat. Bank v. Merchant's Mut. Ins. Co.*, 89 Misc. 2d 771, 392 N.Y.S.2d 836 (1977).

It is clear that, by reason of the 1977 amendment, insurance proceeds received by the insured are proceeds subject to the lien of a security instrument covering collateral which is the subject of a covered loss. That, however, does not answer the question of whether an insurer commits the tort of conversion when it pays the insurance proceeds directly to the insured.

The problem is put into perspective if we first discuss some fundamentals. First: What are the elements of a cause of action for the tort of conversion of personal property? Conversion is an unauthorized assumption and exercise of the right of ownership over goods or chattels belonging to another to the alteration of their condition or the exclusion of the owner's rights. 89 C.J.S. *Trover & Conversion* § 1 (1955). This court has defined conversion as any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. *Polley v. Shoemaker*, 201 Neb. 91, 266 N.W.2d 222 (1978); *Jessen v. Blackard*, 159 Neb. 103, 65 N.W.2d 345 (1954). In the latter case, we also noted that the plaintiff must have the actual custody of the property or some species of property right, general or special, with an immediate right to possession. At 89 C.J.S. *Trover & Conversion* § 3 (1955), it is noted that the essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property.

Second: In the absence of some controlling statutory provision, what are the obligations of an insurer to a lienholder and what are the rights of a lienholder in the proceeds of an insurance policy covering personal property which is destroyed? These duties and rights vary, depending upon the factual situation. The mortgagee, as well as the owner-mortgagor, both have insurable interests in the property. However, the contract of insurance is personal and does not run with the property. If one or the other takes out insurance solely in his own interest, the benefit does not inure to the other. *Wriedt v. Beckenhauer*, 183 Neb. 311, 159 N.W.2d 822 (1968); Annot., 9 A.L.R.2d 299 § 2 (1950). Even though the mortgagor has, in the security instrument, contracted with the mortgagee to insure for the latter's benefit, if the insurance policy contains no loss payable clause covering the lienholder, where the insurer, acting in good faith and without actual knowledge of the mortgagee's interest, pays the insured, it is not liable to the mortgagee. See, Annot., 21 A.L.R. 1464 (1922); *Burns v. Collins*, 64 Me. 215 (1876); *Suttles v. Vickery*, 179 Ga. 751, 177 S.E. 714 (1934); 5A J. Appleman, Insurance Law and Practice 174 (1970 ed.).

Where the mortgagor has contracted with the mortgagee to insure the property for the mortgagee's benefit but fails to have a loss payable clause included in the policy covering the mortgagee's interest, the mortgagee has an equitable lien on the proceeds of the insurance policy. If the insurer has actual notice of the lien and the contractual provision before it pays the insured, it is liable to the mortgagee for his interest. *Gibbes Machinery Co. v. Niagara Fire Ins. Co.*, 119 S.C. 1, 111 S.E. 805 (1921); *N. W. F. & M. Ins. Co. v. N. Y. Life Ins. Co.*, 238 Ky. 229, 37 S.W.2d 67 (1931). Even if the insurer has no notice of the contractual provision, the mortgagee may, before payment is made, bring an equitable action to impress his lien on the proceeds. *Nelson v. Nelson Neal Lumber Co.*, 171 Wash. 55, 17 P.2d 626 (1932). See, also, Annot., 92 A.L.R. 559 (1934). In a few states, there

are special statutory provisions which control. See Annot., 9 A.L.R.2d, *supra* at 304. Thus, it appears that, absent a governing statute, an insurer without notice of the mortgagee's equitable interest who pays the owner-mortgagor, is not liable to the mortgagee.

The question before us is whether the 1977 amendment to § 9-306 was intended to change the applicable rules and, in effect, treat the insurer as one exercising dominion over the mortgaged property, rather than merely making the insurance proceeds paid to the insured subject to a mortgage or other security interest which covers proceeds of the insured collateral.

Section 9-306 reads, in part:

"(1) 'Proceeds' includes whatever *is received*, including insurance proceeds representing destroyed collateral, when collateral or proceeds is sold, exchanged, collected or otherwise disposed of . . . .

"(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also *continues in any identifiable proceeds* including collections *received* by the debtor.

"(3) The security interest *in proceeds* is a *continuously perfected security interest* if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days *after receipt of the proceeds by the debtor* unless

"(a) a filed financing statement covering the original collateral also covers proceeds; . . . ." (Emphasis supplied.)

We conclude from an examination of the statute that the purpose of the amendment was the second alternative stated in subsection (2), i.e., the lien attaches to the proceeds in the hands of the mortgagor and his transferees. An examination of the language of the statute shows that proceeds of an insurance policy covering destroyed property or other proceeds do not become

"proceeds" within the meaning of the code until the money "is received." Patently, this means received by the owner. The insurer does not receive the proceeds; it pays them. This is made clear by the language of subsection (1) referring to acts by the mortgagor: "when collateral or proceeds is sold, exchanged, collected or otherwise disposed of." These refer to acts of the mortgagor. This conclusion is further reinforced by the language of subsection (2) which refers to "sale, exchange or other disposition thereof by the debtor." All this language makes it plain that the mortgagee's lien extends to proceeds received by the debtor. It patently does not apply to an insurer who, in good faith and without actual notice or legal obligation arising from a loss payable clause, fulfills its contractual obligation to pay the owner.

*First Nat. Bank v. Merchant's Mut. Ins. Co., supra,* relied upon by Terra, was later overruled by the court of last resort of the State of New York. *First National Bank of Highland v. Merchant's Mutual Insurance Company,* 49 N.Y.2d 725, 426 N.Y.S.2d 267, 402 N.E.2d 1168 (1980). It is fair to note that the N.Y. U.C.C. § 9-306 did not, at the time the action arose, include within the term "proceeds," money paid by an insurer of property and that the reversal was founded upon the exception then listed at U.C.C. § 9-104(g), to wit, "to a transfer of an interest or claim in or under any policy of insurance," making the U.C.C. inapplicable. Subsection (g) of N.Y. U.C.C. § 9-104 was amended when, in 1977, insurance proceeds were included in the statutory term "proceeds" in § 9-306. For the reasons noted, we do not believe the amendment of the statute would change the result even in New York. Hence, the case cited by Terra is not an applicable precedent.

The petition did not state a cause of action for conversion because it did not allege ultimate facts which would show that Alliance exercised a distinct act of unauthorized dominion over "proceeds," as well as because the petition did not allege facts which gave Terra a property interest, general or special, in the funds before they were

received by Temme. It also fails to allege facts which state a cause of action under a theory other than conversion.

AFFIRMED.