Russell B. Barelmann and Sharon K. Barelmann, Appellants, v. Charles R. Fox, Appellee.
Chambers State Bank, Appellee, v. Russell B. Barelmann and Sharon K. Barelmann, Appellants.
Russell B. Barelmann and Sharon K. Barelmann, Appellants, v. Charles R. Fox et al., Appellees.

478 N.W.2d 548

Filed January 10, 1992.    Nos. 89-499, 89-713, 89-1383.

Michael B. Kratville, of Kratville Law Offices, for appellants.

Daniel D. Jewell, of Jewell, Gatz, Collins, Dreier & Fitzgerald, for appellees Fox, Wrede, and Watson.

Forrest F. Peetz, of Peetz and Peetz, for appellee Bank.

James A. Widtfeldt for appellee Kerkman.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

## I. INTRODUCTION

This opinion adjudicates three individual appeals, each taken in one of three separate but interrelated suits having as their origins the replevin action successfully brought by appellee, Chambers State Bank, against appellants, Russell B. Barelmann and his wife, Sharon K. Barelmann, in which the Barelmanns unsuccessfully counterclaimed for damages. Although this was the first suit filed, it was the second one appealed and is docketed in this court as case No. 89-713.

In the second suit filed, but the third appealed and docketed in this court as case No. 89-1383, the appellants Barelmann unsuccessfully sought redress, under a variety of theories, for the manner in which the replevied property was seized by the appellees, Charles R. Fox, Holt County Sheriff; Everett Watson and Clarence C. Wrede, Holt County Deputy Sheriffs;

Lyle Kerkman, appraiser; Troy Judge, Marvin Stauffer, and Mark Johnson, assistants to the appraiser; and the County of Holt. We hereafter refer to this action as the misconduct suit.

Although docketed last, the third suit was appealed first and bears case No. 89-499 in this court. It came into being after the appellants Barelmann were permitted to sever from the misconduct suit their unsuccessful effort to obtain a declaratory judgment as to their rights against the appellee Fox alone.

In each case, we affirm.

## II. FACTS

Following a long course of dealing, the Barelmanns, who are residents of Chambers, Holt County, Nebraska, executed two promissory notes in favor of the bank. The first note, executed on April 19, 1985, in the initial amount of $99,029.48 and paid down to $98,729.48, represents a renewal and consolidation of other notes and the accumulated interest thereon. The second promissory note, in the initial amount of $2,500 and paid down to $500, was executed on April 22, 1985, for "Fuel, Hog Feed, & Expenses."

On April 19, 1985, the Barelmanns also executed a financing statement and security agreement, which gave the bank an interest in certain specified property and in all equipment and farm products, including but not limited to crops, livestock, and supplies the Barelmanns then owned or might thereafter acquire. Each note provides that it, at the option of the bank and without notice or demand, upon the commencement by the Barelmanns of any proceeding under any bankruptcy law, becomes immediately payable in full.

On May 3, 1985, the Barelmanns filed for protection under chapter XI of the federal Bankruptcy Act, 11 U.S.C. §§ 101 et seq. (1982 & Supp. III 1985). As permitted by 11 U.S.C. § 362 (Supp. III 1985), the bank filed a motion for relief from the automatic stay arising in such situations in order that it might seek to enforce rights it claimed against the Barelmanns. The U.S. Bankruptcy Court for the District of Nebraska granted the bank's motion.

The bank next, on September 8, 1986, filed the replevin

action described in part I, alleging that the Barelmanns were in default on loans in the principal sum of $99,229.48 and that, as a consequence, it was entitled to foreclose on the liens it held on the Barelmanns' property.

On September 23, 1986, the district court entered an order permitting the bank to replevy certain designated property held by the Barelmanns, including certain cattle and specified farm equipment. Fox, with the assistance of Watson, Wrede, Kerkman, Judge, Stauffer, and Johnson, thereafter seized the property listed in the replevin order, as well as other property which was not listed therein.

The Barelmanns subsequently filed a motion seeking return of some of the unlisted property. In response, on October 14, 1986, several of the items seized, including the cattle, were returned to the Barelmanns. The Barelmanns thereafter filed a second motion seeking the return of additional unlisted property or its value. A hearing on that motion was set for December 18, 1986; however, the Barelmanns failed to appear, and, consequently, the second motion was overruled.

Thereafter followed a series of attempts by the Barelmanns to indirectly reclaim the remaining unlisted property by asserting a variety of other damages. The answer filed on January 5, 1987, raised several affirmative defenses, including want of consideration, fraud, coercion, breach of contract, and undue influence, and asserted by way of counterclaim that the bank owed them approximately $300,000.

An even more intensive pleading war then ensued in which the bank by motions and demurrer challenged the Barelmanns' answer, amended answer, and second amended answer. After the district court sustained a portion of the bank's demurrer, it resolved the remaining issues in favor of the bank by a partial summary judgment and later by a directed verdict for the bank at the close of the Barelmanns' case.

While the pleading war in the replevin action was still being fought, the Barelmanns opened a second front by filing the misconduct suit described in part I, seeking damages from the appellees Fox, his deputies, the appraiser Kerkman, Kerkman's assistants, and the county.

In response to appellees' motion to strike the petition in the

misconduct suit, the Barelmanns filed an amended petition and then a second, third, and fourth such petition. In their fourth amended effort, the Barelmanns for the first time sought a declaratory judgment that the replevin was conducted in violation of law. The appellees again demurred; the district court sustained one of the demurrers as to Holt County, but denied the demurrers as to Fox, his deputies, the appraiser, and his assistants. In addition, the district court sustained one of the demurrers as to certain other theories of recovery and dismissed them. The Barelmanns then filed a fifth amended petition, making no mention of the county but again seeking a declaratory judgment that Fox and certain of the others had conducted the replevin improperly, to the Barelmanns' damage. The district court sustained the remaining appellees' demurrer as to the declaratory judgment and dismissed that action, stating that the Barelmanns could not "set forth a meritorious claim on the matters alleged in that cause of action." That left pending in this misconduct suit the causes of action for conversion and trespass, as to which the remaining defending parties successfully filed motions for summary judgment.

As noted in part I, the Barelmanns also filed in the misconduct suit a motion to sever the declaratory judgment action and a motion to amend by dismissing therefrom all parties except Fox, which motions the district court granted.

The declaratory judgment action against Fox was then brought as the third separate suit. The district court sustained Fox's demurrer thereto and dismissed the action.

### III. ANALYSIS OF REPLEVIN ACTION
#### (CASE NO. 89-713)

In this case, the Barelmanns have assigned 10 errors, which, as argued by the Barelmanns, may be summarized as claiming that the district court erred in sustaining the bank's demurrer to certain of the Barelmanns' defenses and striking the same from their answer and counterclaim; granting the bank a partial summary judgment as to other defenses; granting the bank a directed verdict at the close of the Barelmanns' evidence; ruling during trial against the Barelmanns on certain evidential matters; and, finally, taxing the cost of the bank's replevin bond

to them.

## 1. DEFENSES STRICKEN ON DEMURRER

The Barelmanns claim that the district court improvidently struck their assertions that the bank failed to make an appropriate demand before instituting this action, levied on exempt property, and refused to execute a lien waiver on a corn crop maturing after the replevin action was commenced, and that the Barelmanns were not given an opportunity to post a bond, as contemplated by Neb. Rev. Stat. § 25-1098 (Reissue 1989), rather than have the replevied property delivered to the bank. In addition, the Barelmanns complain that the district court struck the paragraph of their answer which concludes that their allegations constitute the affirmative defenses of "accord and satisfication [sic], dirress [sic], estoppel, failure of consideration, fraud, illegality, payment and waiver."

We begin this aspect of our review by recalling the rule that in considering a demurrer, a court accepts the truth of the facts well pled and the factual and legal inferences which may reasonably be deduced therefrom, but does not accept the conclusions of the pleader. *Matheson v. Stork, ante* p. 547, 477 N.W.2d 156 (1991); *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991). Although this rule is generally encountered in the context of a demurrer to a petition, it has equal application to a demurrer to an answer. See *Newman Grove Creamery Co. v. Deaver*, 208 Neb. 178, 302 N.W.2d 697 (1981).

That rule takes care of the first two of the Barelmanns' contentions, for they allege no facts supporting a conclusion that in the context of this replevin action, the bank had any duty to make a prior demand or that any of the property it seized was exempt from the operation of the subject notes and the security agreement of April 19, 1985. The rule also takes care of the Barelmanns' concern with their claim that they were not given an opportunity to post the bond contemplated by § 25-1098, as they did not allege facts showing that they were ready, willing, and able to post such a bond, had the opportunity been presented.

It is true that leave to amend should ordinarily be granted

when a demurrer has been sustained; but such leave is not necessary if there is no reasonable probability that the pleader can remedy the defect. See, *Kane v. Vodicka*, 238 Neb. 436, 471 N.W.2d 136 (1991); *Schmuecker Bros. Implement v. Sobotka*, 217 Neb. 114, 348 N.W.2d 130 (1984). Given the language of the notes and security document, there were no allegations the Barelmanns could make to require a demand or make the replevied property exempt. Their ability to plead that they were ready, willing, and able to post a bond of at least double the value of the property replevied, as § 25-1098 requires, is negated by the bankruptcy.

The Barelmanns' third contention, that the bank failed to execute a lien waiver on a crop maturing after this action was instituted, is resolved by the rule that rights of possession are to be determined as of the time the replevin action was commenced. See *Brown v. Hogan*, 49 Neb. 746, 69 N.W. 100 (1896). As stated in *Alliance Loan & Investment Co. v. Morgan*, 154 Neb. 745, 747, 49 N.W.2d 593, 594 (1951), the focus is on the rights of the parties when the action is filed, and "[w]hat takes place thereafter is immaterial in the consideration and determination of the case."

The remaining contention, that the district court committed prejudicial error in striking the characterization of the legal nature of the facts pled, is also without merit. Either the facts alleged support a legal theory of defense, or they do not. That inquiry is the subject of the analyses which follow.

### 2. SUMMARY JUDGMENT, DIRECTED VERDICT, AND OTHER RULINGS

We begin our analysis of the propriety of the district court's grant of a partial summary judgment, direction of the verdict, and trial rulings by reviewing the nature of a replevin action. In *Schrandt v. Young*, 62 Neb. 254, 259, 86 N.W. 1085, 1087 (1901), citing *Gillespie v. Brown & Ryan Bros.*, 16 Neb. 457, 20 N.W. 632 (1884), this court stated: "The replevin action is primarily to adjudicate the possession of the property. Other rights and claims must be determined, as a general rule, in other appropriate proceedings, even though closely connected with the controversy out of which the contest over possession

arises."

The plaintiff in *Securities Investment Corporation v. Krejci*, 132 Neb. 146, 271 N.W. 287 (1937), sought to replevy a truck subject to a chattel mortgage. The defendant filed a general denial and raised the defense that the plaintiff owed the defendant for breach of warranty and misrepresentation in relation to the sale of the truck. Although this court reversed the verdict in defendant's favor, it stated at 147, 271 N.W. at 287:

> Certainly, if the plaintiff is indebted to the defendant for damages resulting from a breach of warranty or misrepresentation *in the sale of the truck involved in the transaction*, which damages are at least equal to the amount due upon the note, it is a valid defense in a replevin action.

(Emphasis supplied.)

In *Arcadia State Bank v. Nelson*, 222 Neb. 704, 386 N.W.2d 451 (1986), this court reiterated that the subject matter of a replevin action is very narrow. " '[S]ince the main issue in a replevin action is one of title and right to possession, all matters foreign thereto must be excluded from consideration and are not available as defenses.' " *Id.* at 711, 386 N.W.2d at 457. "[T]he issue in replevin is not *ownership* of the property . . . but the *right to immediate possession at the time of the commencement of the action.*" (Emphasis in original.) *Id.* at 712, 386 N.W.2d at 457-58.

The *Arcadia* plaintiff filed a replevin action against the defendants, Carl Nelson and his wife and son, seeking the immediate possession of certain items of personal property which had been pledged to the plaintiff by the husband. At the time the replevin petition was filed, all the property was in the possession of the husband, and the records on file with the county clerk revealed that the husband had executed a financing statement in favor of the son.

Each *Arcadia* defendant answered separately, and the plaintiff moved for summary judgment against each of them. The trial court sustained the motion as to the husband, but overruled it as to the wife and son, as those two had denied that the husband was the sole owner of the property. After a trial,

judgment was also entered against the wife, but the jury found the son had an ownership interest in the property. The plaintiff appealed from the finding for the son.

The *Arcadia* court ruled that once the trial court had entered summary judgment in favor of the plaintiff and against the husband, the only party in possession of the property sought to be replevied, the lawsuit was over. The *Arcadia* court observed, however, that had the property been in the son's possession rather than the husband's, the son's alleged claim of ownership might have been relevant. But as the facts established that the property was in the husband's possession, the son's interest was not relevant.

> All that the Bank was seeking to do was to obtain possession. The replevin did not give it a right to dispose of the property, only the right to have possession. Its right to dispose of the property came by reason of the security agreement signed by Carl Nelson. If, indeed, the Bank did not have the right to dispose of the property, once having acquired possession, Jerry Nelson was at liberty to bring an appropriate action to bar such disposition. That, however, was a part of a separate action and not properly a part of the replevin action.

*Id.* at 712, 386 N.W.2d at 457.

The *Arcadia* court also discussed *Blue Valley Bank v. Bane & Co.*, 20 Neb. 294, 30 N.W. 64 (1886), in which the general owner of a stock of goods was in default on a debt in favor of Blue Valley Bank, which held two chattel mortgages on the goods. In order to foreclose the mortgages, Blue Valley seized and took possession of the goods. At about this time, several general creditors of the owner issued writs of attachment in efforts to levy upon the same goods. The trial court entered a judgment of possession in favor of Blue Valley, but found that the replevied goods had a value in excess of the debt the owner owed Blue Valley and entered judgment for the other creditors in that amount. On appeal, this court affirmed the ruling that Blue Valley was entitled to possession, but reversed the portion of the judgment which assessed damages against Blue Valley and in favor of the other creditors for the surplus funds. In so doing, the *Blue Valley* court stated at 299, 30 N.W. at 67:

The action of replevin, or, as it is, I think, more appropriately termed in our state, the action for the delivery of personal property, is a statutory action, every proceeding in which is specially provided for by statute. It cannot be changed into a suit in equity, nor into one for money had and received; neither does off-set or counter-claim lie against it.

Thus, the issue in a replevin action is not ownership of the property, but the right to immediate possession at the time of the commencement of the action, and, as a general rule, all matters foreign to the issue of possession must be excluded from consideration and are not available as defenses. Accord, e.g., *Dubied Machinery Co. v. Vermont Knitting Co., Inc.*, 739 F. Supp. 867 (S.D.N.Y. 1990) (counterclaims relating to item not replevied could not serve as a defense to replevy of another item); *Faulkner v. Marineland, Inc.*, 18 Conn. App. 1, 555 A.2d 1001 (1989) (claims for storage fees and interest not arising out of replevy not recoverable); *Ford Motor Credit Co. v. Caiazzo*, 387 Pa. Super. 561, 564 A.2d 931 (1989) (breach of warranty defense, as well as counterclaims for return of purchase price paid and defamation damages, not proper defenses to replevin action).

Consequently, the only matters properly at issue in this case were whether the Barelmanns were indebted to the bank and, if so, whether the bank possessed a valid lien on the property it seized. On those issues the district court granted the bank's motion for summary judgment.

At this juncture it is well to recall that summary judgment is properly granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or as to the ultimate inferences deducible from such facts and that the moving party is entitled to judgment as a matter of law. *Flamme v. Wolf Ins. Agency*, ante p. 465, 476 N.W.2d 802 (1991), citing *Krohn v. Gardner*, 238 Neb. 460, 471 N.W.2d 391 (1991). Once the movant has established facts entitling him to summary judgment, the nonmovant has the burden of "presenting evidence to show an issue of material fact which prevents a judgment as a matter of law." *A.G.A. Inc. v. First*

*Nat. Bank, ante* p. 74, 75, 474 N.W.2d 655, 656 (1991). On appeal, it is this court's duty to review the evidence in a light most favorable to the party against whom the judgment was granted and give such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

### (a) Existence of Debt

The existence of the Barelmanns' debt is evidenced by the notes described in part II. These notes are negotiable instruments. See Neb. U.C.C. § 3-104 (Reissue 1980). According to Neb. U.C.C. § 3-307(2) (Reissue 1980), "[w]hen signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

As the Barelmanns admittedly signed the two notes in question, they could successfully defend this aspect of the matter only by showing either that these notes were invalid or that they had been paid.

The promissory note executed on April 19, 1985, recites that its purpose was to "Renew Operating Notes and Int[erest]." Inasmuch as no consideration is necessary for an instrument given as security for a debt already owed by the party giving it, it would appear that as of April 19, 1985, the Barelmanns were indebted to the bank. See, *First Nat. Bank of Omaha v. Kizzier*, 202 Neb. 369, 275 N.W.2d 600 (1979); Neb. U.C.C. § 3-408 (Reissue 1980).

However, the Barelmanns allege that Sharon Barelmann was not a party to the original note creating the indebtedness represented by the April 19 note, and, thus, the April 19 note is not valid as to her. This claim overlooks that the bank's agreement to refinance the loan would, in and of itself, be consideration, as there are no facts pled which show that the bank was under any obligation to agree to refinance the note originally executed by Russell Barelmann. In *Hecker v. Ravenna Bank*, 237 Neb. 810, 815, 468 N.W.2d 88, 93 (1991), quoting *Buckingham v. Wray*, 219 Neb. 807, 366 N.W.2d 753 (1985), we stated:

> "[C]onsideration is sufficient to support a contract if there is any detriment to the promisee or benefit to the

promisor. Generally, a court will not inquire into the adequacy of consideration for a contract, inasmuch as consideration based on value of property or performance of a promise is a matter of personal judgment by parties to a contract. Ordinarily, a contract will not be held invalid for inadequacy of consideration alone, unless inadequacy is so great as to furnish of itself evidence of fraud."

The promissory note executed on April 22, 1985, recites it covered fuel, hog feed, and expenses. There being no evidence it was not so issued, the document itself supports the conclusion that the consideration for its issuance was the advancement of $2,500 for the designated farm expenses.

There being no proof that the notes in question were paid off or otherwise discharged or that they were executed as the result of some fraud or other deceit practiced by the bank, the district court properly determined that the Barelmanns were indebted to the bank.

(b) Existence of a Lien

The existence of the lien is evidenced by the signed financing statement and security agreement dated April 19, 1985.

Neb. U.C.C. § 9-203 (Reissue 1980) provides three basic prerequisites to the existence of a security interest: agreement, value, and collateral. In addition, the agreement must be in writing. The Barelmanns admitted that the signatures on the April 1985 financing statement and security agreement were theirs. Therefore, the requirement of a written agreement is satisfied. They do not claim that they did not own the property given as collateral for the security agreement. Therefore, the only remaining issue is whether value was given for the security agreement.

The definition for value is found in Neb. U.C.C. § 1-201(44) (Reissue 1980): "Except as otherwise provided with respect to negotiable instruments and bank collections . . . a person gives 'value' for rights if he acquires them . . . (d) generally, in return for any consideration sufficient to support a simple contract." The determination that there was valid consideration to support the questioned promissory notes necessarily means that the bank gave value for the security agreement.

Neb. U.C.C. § 9-402 (Reissue 1980) provides, in relevant part:

> A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party . . . gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

The Barelmanns do not plead any facts refuting the existence of any of these requirements. However, Russell Barelmann questions the adequacy of the financing statement, claiming that it does not include, by attachment or otherwise, a list of the equipment and machinery pledged. This position overlooks that the financing statement creates a security interest in

> the following collateral, whether now owned or hereafter acquired: all equipment, all farm products, including but not limited to crops, livestock, supplies used or produced in farming operations, all contract rights and accounts, and in additions, accessions, substitutions thereto, and all products and proceeds thereof, including but not limited to those used in or arising from farming and ranching and dairy operation.

In addition, the financing statement, as required by § 9-402, describes the real estate on which the crops were to be grown.

Neb. U.C.C. § 9-110 (Reissue 1980) provides: "For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." In addition, § 9-402(8) provides: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

In *North Platte State Bank v. Production Credit Assn.*, 189 Neb. 44, 55-56, 200 N.W.2d 1, 8 (1972), this court stated:

> "The fundamental purpose of Art. 9 of the code is to make the process of perfecting a security interest easy, simple, and certain. . . . The code very simply and briefly provides for a notice-filing procedure with a minimum of information required to be publicized in a filed financing statement. All that is required is a minimal description, and it may be by type or kind. The statement need not

necessarily contain detail as to collateral, nor any statement of quantity, size, description or specifications . . . ."

Thus, the financing statement adequately describes the collateral which is the subject of the security interest. The description is such as to put a reasonably prudent person on notice as to which property was covered by a security agreement, thereby fulfilling the purpose of supplying in the financing statement a description of the collateral. Therefore, the assertion in Russell Barelmann's affidavit that no itemized list of the collateral was attached to the financing statement is of no relevance. The district court therefore correctly determined that the bank possessed a valid lien on the property the Barelmanns pledged as collateral for money they obtained from the bank.

As we have seen from the analysis of the nature of a replevin action, once it was determined that the Barelmanns were indebted to the bank and that the bank possessed a valid lien on the property it sought to replevy, there was nothing left to try.

That being so, the district court could not have committed prejudicial error by directing a verdict in favor of the bank at the close of the Barelmanns' evidence, nor could it have committed prejudicial error by any of its evidential rulings at that trial.

### 3. BOND COST

Remaining for consideration in this case is the Barelmanns' contention that the district court erred in taxing against them as a cost of suit the premium the bank paid for the replevin bond it posted, as required by § 25-1098, when the replevied property was delivered to it by the sheriff.

Neb. Rev. Stat. § 25-10,105 (Reissue 1989) provides:

In all cases when the property has been delivered to the plaintiff, where the jury shall find for the plaintiff, on an issue joined, or on inquiry of damages upon a judgment by default, they shall assess adequate damages to the plaintiff for the illegal detention of the property; for which with costs of suit, the court shall render judgment for plaintiff.

The Barelmanns argue first that § 25-10,105 does not apply because there was no finding they illegally detained the property in question and because there was neither a jury finding nor default judgment against them. Obviously, the first claim is without merit, for the replevin judgment in favor of the bank is a finding that the Barelmanns illegally detained the subject property.

As to whether a successful plaintiff may in all circumstances recover the costs of suit, the statute is admittedly less than artfully drawn. But we need not at this time decide whether its language compels the absurd result the Barelmanns espouse, for the bank is entitled to recovery of its costs in this action without reference to § 25-10,105.

Neb. Rev. Stat. § 25-1708 (Reissue 1989) provides: "Where it is not otherwise provided by this and other statutes, costs shall be allowed of course to the plaintiff, upon a judgment in his favor, in actions for the recovery of . . . specific real or personal property." Therefore, the only real issue raised by the Barelmanns' assignment of error is whether, as the bond was posted for their protection, the cost of its purchase may be taxed against them. Although this is a question of first impression for us, other jurisdictions have found that the cost of a replevin bond is correctly taxed to an unsuccessful defendant.

The plaintiff in *Crowe v. Peaslee-Gaulbert Co.*, 37 F.2d 216 (1st Cir. 1930), filed a replevin action. Massachusetts law required such a plaintiff to post a bond in an amount double the value of the goods. In upholding the assessment of the bond premium as a taxable cost to the unsuccessful defendant, the U.S. Circuit Court of Appeals for the First Circuit stated:

> Under modern conditions and practice, bonds by surety companies have come to be the accepted and approved custom where bonds are required; and where the giving of the bond is compulsory, whether by order of court or by statute, the rule as to costs, in reason and authority, requires that premiums on such bonds are properly included in a bill of costs of the successful party.

*Id.* at 218.

The replevin plaintiff in *Deere Co. v. Cerone Equip. Co.*, 33

A.D.2d 257, 307 N.Y.S.2d 129 (1970), moved for summary judgment and included in the proposed bill of costs the bond premium. The trial court granted the summary judgment but rejected as a taxable cost the bond premium. The appellate court modified the trial court's judgment so as to allow the plaintiff to recover the bond premium as a taxable cost of the action. In doing so, the appellate court noted that not only was the plaintiff required to provide the bond in order to gain possession, but also that the defendant interposed no meritorious defense.

We conclude that a successful plaintiff in replevin is entitled to recover the reasonable cost of the bond required of it by § 25-1098.

### IV. ANALYSIS OF MISCONDUCT SUIT
### (CASE NO. 89-1383)

In this case the Barelmanns assign as errors, in summary, the district court's refusal to receive certain exhibits in evidence and its grant of summary judgment in favor of the appellees on the Barelmanns' causes of action for tortious conversion and trespass.

The matter of the exhibits is easily resolved, for they were not, as required by Neb. Rev. Stat. § 25-1332 (Reissue 1989), served by the day prior to the hearing. See *Center Bank v. Mid-Continent Meats, Inc.*, 194 Neb. 665, 234 N.W.2d 902 (1975).

We thus turn our attention to whether the summary judgment was properly granted under the standards reviewed in part III(2).

#### 1. CONVERSION

With respect to their conversion claim, the Barelmanns allege that the property seized but not listed in the replevin order was tortiously converted. Tortious conversion is "any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights." *PWA Farms v. North Platte State Bank*, 220 Neb. 516, 519, 371 N.W.2d 102, 105 (1985). In order for the cause of action to arise, the tort-feasor must have assumed and exercised "the right of ownership over goods or chattels belonging to another . . . ."

*Terra Western Corp. v. Berry and Co.*, 207 Neb. 28, 31, 295 N.W.2d 693, 696 (1980). Hence, a plaintiff in conversion must show (1) an immediate right to possession of the property and (2) its wrongful possession by the tort-feasor. *Id.*

Even if we assume for the purposes of this analysis that the appellees seized property not listed in the replevin order, the Barelmanns cannot satisfy the first element of the cause of action.

As determined in part III(2), the bank has a superior immediate right to possession of the property. The financing statement and security agreement the Barelmanns signed gave the bank a security interest in all of the Barelmanns' equipment and cattle, and further provides:

> Upon . . . default . . . [the bank] may declare all Obligations secured hereby immediately due and payable and shall have the remedies of a secured party under the Nebraska Uniform Commercial Code. [The bank] may require [the Barelmanns] to assemble the Collateral and deliver or make it available to [the bank] at a place to be designated by [it] which is reasonably convenient to both parties.

As noted in part II, the subject promissory notes further provide that the balance on the loans became immediately due upon default, which could be triggered without notice or demand by the filing for bankruptcy.

## 2. TRESPASS

The trespass action is predicated upon the Barelmanns' assertions that when the appellees came onto their property to execute the replevin order, they injured certain cattle.

If we assume for the purposes of this analysis that the appellees did in fact injure the cattle as claimed, the Barelmanns still cannot prevail, for they failed to prove damages.

The measure of damages for nonfatal injuries to livestock is the difference in the market value of the animal immediately before and immediately after the injury. See, *Fuchser v. Jacobson*, 205 Neb. 786, 290 N.W.2d 449 (1980); *Shotkoski v. Standard Chemical Manuf. Co.*, 195 Neb. 22, 237 N.W.2d 92 (1975).

As to the single cow said to have been crippled, there was no evidence of the difference in its value before and after the injury. Nor was there any such evidence. with respect to the cattle said to have suffered a 3-percent shrinkage caused as a result of being herded and penned.

## V. ANALYSIS OF DECLARATORY JUDGMENT ACTION
### (CASE NO. 89-499)

In this case the Barelmanns assign five errors, which merge to effectively claim that the district court erred in dismissing the action following the sustainment of Fox's demurrer and in interfering with the preparation of the record on appeal.

Neb. Rev. Stat. § 25-21,149 (Reissue 1989) provides: "Courts of record . . . shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." In *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 32-33, 388 N.W.2d 93, 97 (1986), quoting *Murphy v. Holt County Committee of Reorganization*, 181 Neb. 182, 147 N.W.2d 522 (1966), this court stated that the purpose of a declaratory judgment is to provide a " 'speedy determination of issues which would otherwise be delayed to the possible injury of the parties.' "

> The remedy of declaratory judgment may be available to a litigant when a controversy exists as a result of a claim asserted against one who has an interest in contesting such claim, the controversy is between persons whose interests are adverse, the party seeking declaratory relief has a legally protectable interest or right in the subject matter of the controversy, and the issue involved is capable of present judicial determination.

*Mullendore, supra* at 33, 388 N.W.2d at 98. A declaratory judgment is "preemptive justice" designed to relieve a party of uncertainty before the wrong has actually been committed or the damage suffered. *LaMarche v. State of Oregon*, 81 Or. App. 216, 725 P.2d 378 (1986). See, *Kapetanov v. Small Claims Court of Ogden*, 659 P.2d 1049 (Utah 1983); *Woodruff v. City of Laredo*, 686 S.W.2d 692 (Tex. App. 1985); *Elkins v. Vana*, 25 Ariz. App. 122, 541 P.2d 585 (1975). However, declaratory

judgments are not to be " 'entertained where another equally serviceable remedy has been provided by law,' " *Zarybnicky v. County of Gage*, 196 Neb. 210, 215, 241 N.W.2d 834, 837 (1976), or to create a new cause of action or a cumulative remedy, *Murphy, supra*.

The Barelmanns have failed for two reasons to properly bring an action for declaratory relief. First, the harm alleged had already occurred by the time the action was brought. Fox, as sheriff, had already replevied the property and turned it over to the bank. The property not listed in the replevin order has since been sold. Consequently, there is no law to interpret in order to determine the rights of the parties, as the alleged damage has been done.

Second, a declaratory judgment cannot be used to provide an alternative or cumulative remedy. See *Murphy, supra*. The Barelmanns could have brought an action in negligence against Fox for his alleged failure to follow the statutory guidelines in a replevin action. Indeed, the Barelmanns had a whole host of remedies available to them, several of which they pled but failed to establish. Notwithstanding, the Barelmanns cannot be allowed to bring an action for declaratory judgment simply because their other remedies, for one reason or another, failed or were not pursued.

On demurrer, a petition will be found sufficient if, from the statement of facts set forth in the petition, the law entitles a plaintiff to recover. *Matheson v. Stork*, *ante* p. 547, 477 N.W.2d 156 (1991).

The determination that a declaratory judgment action does not lie makes it unnecessary for us to determine at this time whether there ever may be circumstances under which a trial judge may interfere with the preparation of the record a litigant wishes to bring to the appellate courts.

## VI. DECISION

For the foregoing reasons, the judgment of the district court in each case is, as first stated in part I, affirmed.

AFFIRMED.