ERVIN MELCHER, APPELLEE, V. THE BANK OF MADISON, APPELLANT.

529 N.W.2d 814

Filed April 11, 1995.   No. A-93-670.

Daniel A. Fullner, of Moyer, Moyer, Egley, Fullner & Warnemunde, for appellant.

Vince Kirby for appellee.

SIEVERS, Chief Judge, and MILLER-LERMAN, Judge, and HOWARD, District Judge, Retired.

MILLER-LERMAN, Judge.

The Bank of Madison appeals the judgment entered against it by the district court for Madison County, Nebraska, following a trial to a jury. By its verdict, the jury found that The Bank of Madison had wrongfully converted a John Deere model 4450 tractor allegedly owned by Ervin Melcher, plaintiff-appellee, and awarded damages to him in the amount of $28,000. For the reasons recited below, we reverse.

## FACTS

This case involves the resolution of various conflicting ownership interests in a John Deere model 4450 tractor (the 4450 tractor). The persons and entity involved are Ervin Melcher (Ervin); Donald Melcher (Don), Ervin's 37-year-old son and a former part-time grain farmer with 6 acres of his own and approximately 160 acres leased from Ervin; and The Bank of Madison (the Bank).

In April 1979, by virtue of a document entitled "Financing Statement," Don granted the Bank

> a security interest in the following collateral, whether now owned or hereafter acquired by the debtor; all equipment, including but not limited to all farm equipment, tractors, machinery and implements: all farm products, including but not limited to crops, livestock, and supplies used or produced in farming operations; all contract rights and accounts; and in additions, accessions and substitutions thereto; and all products and proceeds thereof.

The security agreement underlying the original 1979 security interest evidenced by the above-referenced financing statement is not part of the record in front of this court. The security interest in Don's property secured Don's present and future indebtedness to the Bank. The Bank perfected its security interest in the above-described property by filing the Uniform Commercial Code financing statement on May 1, 1979. By filing the necessary continuation financing statements, the Bank held a perfected security interest in all of Don's farm property and equipment throughout the period in question in this case.

The testimony shows that at least since early 1986, Don had

been having frequent mechanical difficulties with his John Deere model 4430 tractor (the 4430 tractor). Consequently, Don had been looking at the 4450 tractor at C.C. Implement, Inc. (C.C.), and had even taken it home to his farm to try it out. Don returned the 4450 tractor to C.C. after deciding it was out of his price range.

At Don's request to him to "go out and trade [the 4430 tractor] for that [4450] tractor," Ervin went to C.C. on June 9, 1986, and traded the 4430 tractor toward the $40,357.50 total purchase price of the 4450 tractor. The sales contract between C.C. and Ervin for the 4450 tractor reflects that C.C. gave a $15,000 credit for the trade-in of Don's 4430 tractor, less the $7,693 balance due on the 4430 tractor. Ervin also tendered $5,000 in cash toward the purchase of the 4450 tractor. The balance due on the 4450 tractor, after subtracting the $5,000 cash payment and the trade-in value of the 4430 tractor, less balance due, equaled $28,050.50. According to Ervin's testimony, he paid off the balance due on the 4450 tractor soon after the purchase. After the purchase of the tractor, Ervin directed Tim Tighe, vice president of the Bank, to prepare a promissory note from Don in favor of Ervin in the amount of $28,000. Tighe testified that Ervin indicated to him that Don was the owner of the 4450 tractor, that Ervin had loaned Don the money to purchase the tractor, and that the purpose of the note was to evidence and document such loan. Pursuant to Ervin's instructions, the note carried interest at the rate of 8 percent, called for one $5,000 payment, and extended for a term of 1 year. The 4450 tractor did not serve as security for the note. Don executed the note at Ervin's request. Ervin testified that the parties executed identical notes for the years 1988 through 1991. Each of the notes included the notation "loan to purchase John Deere 4450 MFWD tractor."

Ervin and Don both testified that Don never paid Ervin any money toward the satisfaction of the notes. However, the record indicates that the testimony in this regard may not be completely accurate. Exhibit 49, a commercial lending agreement, reflects that Don obtained a $5,000 loan from the Bank on February 17, 1987. According to the language of Exhibit 49, the purpose of the loan was "Business: First

payment on John Deere 4450 MFWD tractor." Also on February 17, Don wrote a check to Ervin in the amount of $5,000. The memo on the check notes "4430 last payment."

Don's testimony with respect to the February 17 loan and check to Ervin was inconsistent. First, Don testified that he did not know if he had borrowed the money to pay Ervin. Thereafter, Don testified that the purpose of the loan was to make the final payment on the 4430 tractor. Notwithstanding Don's explanation, it is undisputed that the 4430 tractor had been traded in and paid off 8 months prior to the date of the loan, and it would appear logical that the purpose of the $5,000 loan to Don was to permit Don to make the one-time $5,000 payment to Ervin as required by the promissory note executed in connection with the 4450 tractor.

Ervin testified that he had possession of the 4450 tractor from the time of its purchase until it was seized and sold in 1992. However, the record indicates that after the purchase of the 4450 tractor on June 9, 1986, C.C. delivered it directly to Don's farm. Ervin also testified that all of the members of the Melcher family used the tractor whenever they needed it. It is clear from the record that Don used the 4450 tractor in his farming operations from 1986 through 1992. Additionally, Don and Ervin agreed that Don would be responsible for all necessary repairs on the 4450 tractor.

Rodney Zwygart, a certified public accountant who prepared the income tax returns for both Ervin and Don for the years in question, testified that Don deducted the depreciation generated by the 4450 tractor on his tax returns for 1986 and subsequent years. Ervin never claimed any depreciation for the 4450 tractor. Zwygart testified that prior to March 1, 1987, Ervin explained to him that Don would take the entire depreciation deduction for the 4450 tractor because Ervin had previously sold the 4450 tractor to Don. At trial, Ervin explained that he did not take the depreciation deduction for the 4450 tractor because he "didn't need it." However, the record indicates that the depreciation deduction was not necessarily beneficial to Don because Don had a net operating loss to carry forward during the years in question.

As established by exhibits 16 through 18, Don's bank

financial statements for the years 1987 through 1989, Don listed the 4450 tractor as a personal asset. Tighe testified that the Bank had relied on these financial statements and specifically Don's claim of ownership of the 4450 tractor in advancing Don further loans during this period.

On December 1, 1989, Don filed a petition for relief under chapter 12 of the U.S. Bankruptcy Code. Don filed a schedule of assets with the bankruptcy court which included the 4450 tractor. Ervin received notice of Don's bankruptcy petition, but did not file an objection or other pleading to contest Don's claim of ownership of the 4450 tractor. Don moved to convert his bankruptcy to chapter 7 on February 7, 1992, after the chapter 12 plan proved unsuccessful.

When Don's bankruptcy was converted to chapter 7, the Bank filed an action in replevin to confirm its right to possession of the collateral, including the 4450 tractor, covered under its security agreement with Don. Don did not respond to the Bank's replevin action. Consequently, the district court for Madison County entered a default judgment in favor of the Bank on June 12, 1992. The judgment of replevin included an itemized list of the subject property, which list included the 4450 tractor. Pursuant to its rights under the judgment of replevin, the Bank seized and sold the subject property, including the 4450 tractor, and applied the proceeds against Don's indebtedness.

On August 18, 1992, Ervin filed a petition against the Bank in the district court for Madison County. The petition alleged that Ervin was the rightful owner of the 4450 tractor and that the Bank had wrongfully converted it, damaging Ervin in the amount of $39,500.

The case was tried to a jury on May 17, 1993. At the close of Ervin's evidence and at the close of all evidence, the Bank moved for a directed verdict, which motions the court overruled. On May 18, counsel for the Bank stated that the Bank had no objections to the court's proposed jury instructions or to the form of the verdicts. After the court instructed the jury, the jury deliberated and returned a verdict in favor of Ervin in the amount of $28,000.

On May 27, 1993, the Bank moved the court to grant a

judgment notwithstanding the verdict or, alternatively, to vacate the verdict and grant a new trial. The court overruled both the motion for judgment notwithstanding the verdict and the motion for new trial on July 9, 1993. The Bank appeals.

## ASSIGNMENTS OF ERROR

The Bank asserts that the district court erred in (1) overruling the Bank's motion for judgment notwithstanding the verdict, (2) overruling the Bank's motion for new trial, and (3) refusing to give several of the Bank's tendered jury instructions.

## SCOPE OF REVIEW

A trial court may sustain a motion for a directed verdict or a motion for judgment notwithstanding the verdict only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issue should be decided as a matter of law; if there is any evidence which will sustain a finding for the party against whom the motion for directed verdict is made, the case may not be decided as a matter of law. *Kroeger v. Ford Motor Co.*, 247 Neb. 323, 527 N.W.2d 178 (1995); *Stoco, Inc. v. Madison's, Inc.*, 235 Neb. 305, 454 N.W.2d 692 (1990); *Shibata v. College View Properties*, 234 Neb. 134, 449 N.W.2d 544 (1989); *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989). A jury verdict will not be disturbed on appeal unless it is clearly wrong. *Stoco, Inc., supra*; *Commerce Sav. Scottsbluff, supra*.

As to questions of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review. *National Acct. Sys. of Lincoln v. Vergith*, 246 Neb. 604, 521 N.W.2d 910 (1994); *Upah v. Ancona Bros. Co.*, 246 Neb. 585, 521 N.W.2d 895 (1994); *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994).

## ANALYSIS

Ervin sued the Bank for conversion. The term "tortious conversion" means " 'any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights.' . . . In order for the cause of action to arise, the tort-feasor must have assumed and exercised 'the

right of ownership over goods or chattels belonging to another
. . . .' " (Citations omitted.) *Barelmann v. Fox*, 239 Neb. 771,
786, 478 N.W.2d 548, 558 (1992). A plaintiff who asserts that a
defendant has tortiously converted plaintiff's property
generally must prove that (1) plaintiff has an immediate right to
possession of the subject property, and (2) defendant
wrongfully possesses such property. *Id.*

The essence of the argument propounded by the Bank in its
motions for directed verdict and posttrial motions was that
Ervin neither owned nor had an immediate right to possession
of the 4450 tractor. The Bank asserted in its motions that the
law and evidence showed that Don had some ownership interest
in the tractor and that Ervin did not have an immediate
possessory interest or legal title to the tractor. We agree with the
Bank.

The record shows that C.C. delivered the tractor to Don's
farm, that Don consistently used the 4450 tractor for his
farming operations and was responsible for its repair, that Don
claimed ownership of the 4450 tractor in his financial
statements and in his tax returns, and that Ervin did not claim
an ownership interest in the 4450 tractor in Don's bankruptcy
proceedings. The foregoing evidence indicates that Don, rather
than Ervin, exercised possessory and some legal rights to the
4450 tractor.

The record shows that Don affirmatively claimed
ownership of the 4450 tractor to his benefit in two respects: (1)
by deducting the depreciation of the tractor on his income tax
returns and (2) by listing the 4450 tractor on his financial
statements. We note that the Internal Revenue Service applies
stringent tests of ownership to determine whether a taxpayer is
entitled to take a depreciation deduction with respect to certain
property. See *Upham v. C.I.R.*, 923 F.2d 1328, 1334 (8th Cir.
1991) (holding that factors pertinent to determination of
"ownership" for tax purposes include " '(1) [w]hether legal title
passes; (2) the manner in which the parties treat the transaction;
(3) whether the purchaser acquired any equity in the property;
(4) whether the purchaser has any control over the property
and, if so, the extent of such control; (5) whether the purchaser
bears the risk of loss or damage to the property; and (6) whether

the purchaser will receive any benefit from the operation or disposition of the property' ").

The record also shows that the Bank obtained a default judgment against Don in a replevin action. In the replevin action, the Bank alleged that it was entitled to possession and immediate delivery of all of Don's farm products, inventory, and equipment, pursuant to its security interest in such property. The itemized list of replevied property included the 4450 tractor. The purpose of a replevin action is primarily to adjudicate the right of possession of property. *Barelmann, supra*. Further, " ' "[w]here a defendant is in default the allegations of the petition are to be taken as true against him . . . ." ' " *State on behalf of Yankton v. Cummings*, 2 Neb. App. 820, 827, 515 N.W.2d 680, 685 (1994) (quoting *Weir v. Woodruff*, 107 Neb. 585, 186 N.W. 988 (1922)). See, also, Neb. Rev. Stat. § 25-842 (Reissue 1989). Thus, pursuant to the replevin action, the Bank gained Don's possessory rights to the 4450 tractor.

At trial and on appeal, Ervin claims that he is the sole owner of the 4450 tractor. Ervin argues that he bought the tractor and that a "sale" of the tractor from Ervin to Don never occurred because Don never paid Ervin for the tractor. Ervin testified that "if [Don] pays me for the tractor, he can have it." However, the uncontradicted facts of this case are inconsistent with Ervin's suggestion that Don held no ownership interest in the 4450 tractor.

The promissory notes from Don to Ervin in the amount of $28,000 constituted adequate consideration in exchange for the 4450 tractor. In this regard, the Nebraska Supreme Court has stated:

"[C]onsideration is sufficient to support a contract if there is any detriment to the promisee or benefit to the promisor. Generally, a court will not inquire into the adequacy of consideration for a contract, inasmuch as consideration based on value of property or performance of a promise is a matter of personal judgment by parties to a contract. Ordinarily, a contract will not be held invalid for inadequacy of consideration alone, unless inadequacy is so great as to furnish of itself evidence of fraud."

*Hecker v. Ravenna Bank*, 237 Neb. 810, 815, 468 N.W.2d 88, 93 (1991) (quoting *Buckingham v. Wray*, 219 Neb. 807, 366 N.W.2d 753 (1985)). It has long been held that a "sale" of property ordinarily occurs upon "a transmutation of property from one man to another in consideration of some price or recompense in value." *Dial Realty, Inc. v. Cudahy Co.*, 198 Neb. 641, 644, 254 N.W.2d 421, 423 (1977). Accordingly, Ervin cannot avoid the reality of the sale because Don failed to pay him the full $28,000.

This court has examined Ervin's argument that he intended to retain an ownership interest in the 4450 tractor. We believe that the proper analysis of Ervin's claim is found in the Nebraska version of article 9 of the Uniform Commercial Code, Neb. U.C.C. § 9-101 et seq. (Reissue 1992).

Article 9 of the Uniform Commercial Code defines and prioritizes conflicting interests in property such as the 4450 tractor at issue in this case. Under article 9, parties can share ownership of property, with each party having its own bundle of ownership interests. *Greenbush State Bank v. Stephens*, 463 N.W.2d 303 (Minn. App. 1990). In the case at bar, both Don and Ervin contributed to the purchase of the 4450 tractor: (1) Don traded in his 4430 tractor, for which he was given a $15,000 credit, out of which C.C. subtracted $7,693 to pay off the 4430 tractor, and (2) Ervin paid $5,000 in cash at the time of the purchase and eventually paid off the $28,050.50 balance. The money Ervin contributed toward the purchase of the 4450 tractor allowed Don to obtain a new tractor. Article 9 contemplates this type of transaction and, upon fulfillment of code requirements, grants those who contribute money toward the purchase of property and who retain a security interest in such property a "purchase money security interest." See *Greenbush State Bank, supra*; § 9-107.

Section 9-107 provides:

A security interest is a "purchase money security interest" to the extent that it is

. . .

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in

fact so used.

Under § 9-107(b), Ervin would have a purchase money security interest, and no more.

As recited above, due, inter alia, to its source of funding, its use, and its tax treatment, we conclude that Don had some ownership interest in the 4450 tractor beginning at the time of its purchase. As indicated above, the Bank had a continuously perfected security interest in all of Don's property and equipment. Through the after-acquired property clause in the security agreement, the Bank's security interest attached to any ownership interest that Don had in the tractor at the time Don acquired such ownership interest. Under § 9-203(1)(c), Don had "rights in the collateral" such that those rights could be attached by the Bank under a security agreement. Therefore, the Bank's security interest attached to the 4450 tractor at the time of its purchase. The Bank's security interest was the basis of its successful replevin action against Don, in which judgment was entered in June 1992.

The foregoing analysis indicates that when Ervin filed his instant petition in August 1992, alleging conversion, both Ervin and the Bank had conflicting security interests in the 4450 tractor. The priority of these conflicting security interests is resolved under the Uniform Commercial Code.

Section 9-312(5)(a) provides in part that "[c]onflicting security interests rank according to priority in time of filing or perfection." As stated above, the Bank perfected its security interest in all of Don's farm equipment and after-acquired property by filing a financing statement in May 1979. There was no subsequent period when the Bank did not have a perfected security interest in Don's equipment. Pursuant to the after-acquired property clause, the secured property included the 4450 tractor as soon as it was purchased. Therefore, the Bank's security interest in the 4450 tractor was immediately perfected. Nevertheless, a purchase money security interest could defeat the Bank's first-in-time security interest, if perfected under the code.

■ Article 9 provides special priorities for purchase money security interests in certain situations. Section 9-312(4) provides that "[a] purchase money security interest in collateral other

than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within twenty days thereafter." In order to retain the priority of his purchase money security interest over the Bank's existing security interest, Ervin had to perfect his interest within 20 days after Don received the 4450 tractor. There is no claim or any evidence in the record which indicates that Ervin filed a security interest, and, accordingly, due to lack of perfection, Ervin lost the priority available to him under § 9-312(4) to the Bank's perfected security interest. Any argument that Ervin might make that the Bank was aware that Ervin had provided funds toward the purchase of the 4450 tractor and that, therefore, Ervin should be excused from § 9-312(4) compliance is unavailing. It has been stated that "[t]he purchase money priority is an exception to the first to file rule, and it should be applied only in accordance with the limitations established by the Code." *North Platte State Bank v. Production Credit Assn.*, 189 Neb. 44, 54, 200 N.W.2d 1, 7 (1972).

Notwithstanding Ervin's failure to perfect by filing, Ervin could also have perfected his security interest under the Uniform Commercial Code by taking absolute possession of the 4450 tractor within 20 days of its purchase. See § 9-305. Under § 9-305, a "security interest in . . . goods . . . may be perfected by the secured party's taking possession of the collateral." The definition of "goods" under article 9 includes farm equipment. See §§ 9-105(1)(h) and 9-109(2). To effect perfection by possession, " 'possession . . . must be unequivocal, absolute and notorious, so that third persons may be advised.' " (Emphasis omitted.) *Transport Equipment Co. v. Guaranty State Bank*, 518 F.2d 377, 381 (10th Cir. 1975). Accord *Hutchison v. C.I.T. Corp.*, 726 F.2d 300 (6th Cir. 1984). Under the code, perfection by possession "continues only so long as possession is retained." § 9-305. Even taking the facts favorably to Ervin, in view of Ervin's testimony that other family members used the 4450 tractor, it cannot be concluded that Ervin perfected by absolute and continuous possession.

The foregoing demonstrates that, even under a reading of the

facts favorable to Ervin, Don had an ownership interest in the 4450 tractor. Because Don had an ownership interest in the 4450 tractor, the Bank's security interest attached to the 4450 tractor at the time of its purchase. The ownership interest of Don as assumed by the Bank in the 4450 tractor has priority over Ervin's unperfected purchase money security interest and precludes a successful conversion action by Ervin.

In view of the foregoing, the trial court erred in denying the Bank's motion for directed verdict at the close of the evidence and in denying the Bank's posttrial motions. Due to the nature of our holding, we need not address the Bank's other assignments of error.

REVERSED.